**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Manuel QUINTANA–GOMEZ and Guillermo Ceron, Defendants-Appellants.**

**No. 73–2390**

**Summary Calendar.\***

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1974.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Mario N. Herce, Tampa, Fla. (Court-appointed), for Guillermo Ceron.

Anthony F. Gonzalez, Tampa, Fla. (Court-appointed), for Manuel Quintana-Gomez.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Claude H. Tison, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before BELL, GODBOLD and GEE, Circuit Judges.

PER CURIAM.

Appellants were convicted, after a jury trial, on counts of importing and possessing $2\frac{1}{2}$ lbs. of cocaine, and each received concurrent 5-year sentences on each of the two counts. The cocaine had been discovered by customs officers during a border search which occurred two miles from the banana boat *Maya,* on which appellants served as crewmen. The officers had kept appellants under surveillance for several hours before the search, and had trailed them from the *Maya.* The boat itself had been staked out because of its history of carrying drugs from Colombia, and because of an anonymous tip.[1]

This appeal challenges the search, and also the prosecution's use of the fact that appellants did not tell arresting officers an exculpatory story they introduced at trial.

As for the search, appellant Ceron argues that it was not a border search and that it thus had to be supported by probable cause. This contention is without merit. See Walker v. United States, 5 Cir., 1968, 404 F.2d 900; Davis v. United States, 5 Cir., 1970, 431 F.2d 693.

Both appellants contend that even if the search were a border search it was not supported by reasonable suspicion. In order to explain our contrary conclusion we need only note the *Maya's*

1. The tipster's information about the *Maya's* sister ship had been proven correct earlier the same day.

suspicious status, and also outline appellants' behavior after they left the ship with other crewmen about 9:00 p.m., and went with them to a bar. After a series of phone calls by a co-defendant (who has not appealed his conviction), the three men were picked up by an unknown driver. They proceeded along a twisting, evasive route, eventually losing customs officers who were tailing them. They returned to the *Maya* about 11:30 p.m. and departed again about 1:00 a.m. They went to another bar, made a call, hailed a taxi, and with a fourth man went about two miles from the dock. After having waited several minutes in front of a closed furniture store, they were apprehended and searched.

■■ Appellants' final point of appeal concerns the government's response to their claim at trial that they had been forced by threats of death or injury to carry the cocaine ashore. The prosecution inquired on cross-examination whether this exculpatory story had been told to the arresting officers, and argued to the jury that the failure to do so cast doubt on its veracity. The prosecution also called as a rebuttal witness a Spanish-speaking Customs officer who was not present at the arrest but who had questioned appellants the next day and had not been told the story.

We consider this third point of appeal to be foreclosed by United States v. Ramirez, 5 Cir., 1971, 441 F.2d 950, a case with similar facts and a dead-to-point holding that silence at the time of arrest may be considered when a jury evaluates a defendant's explanation. As for the agent's testimony, it was relevant to impeachment of appellants' claim that their efforts to tell the officers had been frustrated by the fact that none spoke Spanish, and also of the claim that they had told another agent, who was not immediately available to testify, but who had been with the testifying agent throughout the next day's questioning.

Affirmed.