PEOPLE v TERRY MOORE

PEOPLE v McFARLAND

Opinion of the Court

1. Criminal Law—Constitutional Law—Arrest—Right to Remain Silent.

The use against a defendant at trial of his exercise of his constitutional right to remain silent at the time of arrest constitutes prejudicial error.

Dissent by V. J. Brennan, P. J.

2. Witnesses—Defendants—Cross-Examination—Direct Examination—Evidence—Admissibility.

*A prosecutor has the right to cross-examine a defendant in those areas covered on direct examination, even though the testimony may not otherwise have been admissible.*

3. Criminal Law—Constitutional Law—Arrest—Right to Remain Silent—Witnesses—Defendants—Impeachment.

*The use against a defendant at trial of his exercise of his constitutional right to remain silent at the time of arrest constitutes prejudicial error only where the defendant has made no allegations on direct examination as to what was said or not said at the time of arrest.*

4. Burglary—Evidence—Demonstration—Admissibility.

*A prosecutor's demonstration of how a door was opened, in a trial for breaking and entering, is admissible as part of the explanation of his theory of entry.*

References for Points in Headnotes

[1, 3] 29 Am Jur 2d, Evidence § 638 *et seq.*

[2] 58 Am Jur, Witnesses §§ 627, 629.

[4] 58 Am Jur, Witnesses § 61.

21 Am Jur 2d, Criminal Law § 362.

Requiring defendant in criminal case to exhibit self, or perform physical acts, during trial and in presence of jury. 171 ALR 1144.

Appeal from Wayne, Michael L. Stacey, J. Submitted Division 1 May 5, 1974, at Detroit. (Docket Nos. 16298, 16945.) Decided October 7, 1974.

Terry L. Moore and Dennis N. McFarland were convicted of breaking and entering an occupied dwelling with intent to commit larceny. Defendants appeal. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Thomas Khalil,* Assistant Prosecuting Attorney, for the people.

*Colista & Baum,* for defendant Moore.

*Ingle & Burke,* for defendant McFarland.

Before: V. J. Brennan, P. J., and R. B. Burns and R. L. Smith,* JJ.

R. B. Burns, J. Defendants were tried and convicted, jointly, of breaking and entering an occupied dwelling with intent to commit larceny. MCLA 750.110; MSA 28.305.

They appeal and we reverse.

The prosecutor, while cross-examining defendant McFarland, adduced the following testimony:

"*Q.* Were you arrested for breaking and entering?
"*A.* The sergeant said, 'these are the boys that did the breaking and entering and you're under arrest'.
"*Q.* What did you say?
"*A.* Nothing.
"*Q.* Nothing?

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"*A.* I was flabbergasted.

"*Q.* Did you ever tell the police about Earl?

"*A.* What do you mean, sir, about Earl?

"*Q.* Did you ever mention Earl to the police?

"*A.* I never had a chance. I went directly to the police station.

"*Q.* Did the police officer talk to you at the police station?

"*A.* Yes.

"*Q.* What did you tell him?

"*A.* He started asking if I was a heroin addict.

"*Q.* What did you tell him?

"*A.* After they were talking to me about the heroin, they said I had the right to be quiet and to get an attorney. I said I guess I should.

"*Q.* You didn't tell them anything else?

"*A.* Outside of my name and stuff. I mean—I was trying to cooperate.

"*Q.* Did you tell them about a broken windshield?

"*A.* No, I didn't.

"*Q.* Did you tell them about a fight?

"*A.* No, I did not.

"*Q.* Were you perspiring or a little sweaty when the police arrested you, if you remember?

"*A.* I imagine I was. I'd walked quite far."

We think this testimony is the exact type of testimony prohibited in *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

Also, the trial court should not have allowed the prosecutor to conduct the irrelevant demonstration of opening a door with a credit card.

In addition, when instructing the jury, the trial court should keep in mind the distinction between inferring intent from an unlawful act and presuming intent from an unlawful act.

Reversed and remanded for a new trial.

R. L. SMITH, J., concurred.

V. J. BRENNAN, P. J. *(dissenting).* In this matter, the defendants were tried jointly and convicted of breaking and entering an occupied dwelling with intent to commit larceny. MCLA 750.110; MSA 28.305.

My colleagues have reversed this conviction by opinion.

I must respectfully dissent from my fellow judges in this case. My review of the record presents a different picture to me than that reached by my colleagues. Consequently a different application of the cited authority is, in my opinion, required.

My colleagues quote the prosecutor's cross-examination of defendant McFarland and use it as the main reason for the reversal, citing *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), as authority. I too would concur if that testimony had been initiated by the prosecution. A careful review of the transcript, however, shows very clearly that this entire testimony was first brought out on direct examination by the defendant and his counsel, a practice frequently used as a matter of strategy so that the defendant rather than somebody else tells the story.

This gave the prosecutor the *right* to cross-examine in the same areas. I feel it is academic in trial practice that once the door is opened on direct examination those areas may be examined on cross, even though they may not otherwise have been admissible. *People v Roger Johnson,* 382 Mich 632; 172 NW2d 369 (1969); *People v Markham,* 19 Mich App 616; 173 NW2d 307 (1969), *lv den* 383 Mich 804 (1970). *Cf. LaForest v Grunow,* 43 Mich App 254; 204 NW2d 355 (1972).

On direct examination the defendant testified about the heroin question, about whether he had

killed anybody, about the broken windshield, about the fight, about Earl, about the police reading him his rights, about them telling him of his right to a lawyer, about his stating "no" as to whether he wanted to make a statement, and about his telling the police that he wanted a lawyer.

These are the exact areas upon which the prosecution examined him.

Supreme Court Justice Thomas Giles Kavanagh, in his well-written opinion in *Bobo, supra,* said on p 359: "In the present case on direct examination defendant gave no testimony whatsoever regarding any statement made to the police or anyone else."

The qualification clearly shows that had he given any testimony on direct examination regarding a statement, cross-examination in that area would have been admissible. Also, at the beginning of the opinion, Justice Kavanagh framed the question as follows:

"Where an accused exercises his constitutional right to remain silent at the time of the arrest, does the use of such silence against him at trial under the doctrine of impeachment by prior inconsistent statement constitute prejudicial error where he made no allegations on direct examination as to what was said or not said at the time of arrest?"

I point out again the qualification and restate the last part of that question: " * * * where he made no allegations on direct examination as to what was said or not said at the time of arrest?"

My colleagues have misapplied the mandate in *Bobo.*

As to the other issues, I have examined the instructions in their entirety and find that they fairly charge the jury on the law.

The demonstration of how the door was opened is permissible as being part of the prosecutor's explanation of his theory of entry. This is admissible testimony to a jury who must then determine what weight or credibility it shall give to it.

I find no error in this case. It should be affirmed.