COMMONWEALTH *vs.* WILLIE BENNETT.

Suffolk. February 19, 1974. — October 8, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Constitutional Law,* Self-incrimination. *Evidence,* Impeachment of witness. *Error,* Whether error harmful. *Practice, Criminal,* Charge to jury.

At the trial of an indictment for assault with intent to murder a police officer, where the defendant had testified that it was his companion who had shot the police officer, admission in evidence of the defendant's further testimony that he had not volunteered this information prior to trial violated the defendant's Fifth Amendment right to remain silent and G. L. c. 278, § 23 [577-580]; in view of the absence of circumstantial evidence or eyewitnesses other than two police officers and the judge's charge which stressed the defendant's silence, the error in admitting the testimony was prejudicial [582].

Erroneous admission in evidence of a criminal defendant's testimony that he had remained silent concerning one charge against him

was irrelevant to his conviction on another charge for which he was being tried simultaneously but which arose from a separate incident. [583]

INDICTMENTS found and returned in the Superior Court on March 9, 1973.

The cases were tried before *Linscott*, J.

*Maurice F. Ford* for the defendant.

*Thomas F. Reardon*, Assistant District Attorney, for the Commonwealth.

ROSE, J. The defendant was indicted for assault with intent to murder (by means of a revolver) and assault and battery by means of a dangerous weapon (handcuffs) and was convicted upon jury verdicts after a trial held pursuant to G. L. c. 278, §§ 33A-33G.[1] He has assigned as error the allowance of certain questions on cross-examination and a portion of the judge's charge to the jury.

The evidence introduced at trial was as follows. While on patrol during the early morning hours of February 3, 1973, two Boston police officers, Michael McWeeny and Keith Carlson, observed an automobile travelling at a high rate of speed on a street in Roxbury. The officers chased the vehicle until it stopped; Carlson then stepped out of the police cruiser and twice ordered the driver to get out of his car. Instead, the man drove away.

After a further chase the automobile stopped again and the driver, together with another man, left the vehicle and ran into a housing project. While Carlson pursued the men on foot, McWeeny drove the police cruiser down an intersecting street and caught the men in his headlights as they ran.

After crossing in front of McWeeny, the men took different paths, the driver running to the left of a fenced-

---

[1] Three indictments brought against the defendant for motor vehicle offenses and one indictment for the unlawful carrying of a firearm were placed on file. The defendant has not argued, nor do we consider, any assignment of error relating thereto. Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972).

in electric transformer while his passenger ran to its right. McWeeny drove after the man who ran to the left of the transformer and trapped him against the fence. The suspect, who at this time was about five feet away from the police cruiser, appeared to surrender. As he approached the passenger side of the cruiser, however, the suspect drew a revolver and fired four shots through the car window, wounding McWeeny twice. Carlson, who had been walking toward McWeeny, saw the suspect fire and run away. He shot at the fleeing man, then went to assist his wounded partner and radio for help.

Later that night other police officers saw two men answering to a description given by Carlson enter a taxicab. They arrested the men, who were identified as the defendant and one Parks. A revolver was found under the front seat of the taxi on the side on which the defendant had gotten out. Both Carlson and McWeeny identified the defendant as the person who had driven the automobile which they chased and who had later shot McWeeny.

The defendant, who testified in his own behalf, confirmed the officers' account of the automobile chase. He contended, however, that the police had confused him with his passenger Parks during the final stages of the pursuit on foot and that it was Parks, not he, who had run to the left of the electric transformer and had subsequently shot McWeeny. The defendant testified that after hearing shots he had rejoined Parks and the two men had hired a taxi. Parks had thrown a gun to the defendant's side of the cab while they were seated inside.

The assault charge arose from a separate incident which occurred at a Roxbury police station while the defendant was being booked. Robert McCarthy, a Boston police officer, testified that as he was unlocking the defendant's handcuffs, the defendant began to shout and struck him in the face with the handcuffs. Mc-

Carthy's partner, Thomas Lannon, testified that he heard a "commotion" and, upon turning, saw the two men struggling on the station house floor. The defendant testified, however, that he had been taken inside the police station and beaten by McCarthy and other officers in retaliation for the shooting.

In the course of cross-examination, the assistant district attorney asked the defendant a series of questions calculated as a whole and in context to call attention to his failure to give his account of the shooting to police or to custodial officers prior to trial.[2]   Certain of the questions were allowed over the defendant's objection and exception.

That a defendant has a constitutional right to remain silent in the face of accusations against him, not only

---

[2] The testimony was in relevant part as follows:

ASSISTANT DISTRICT ATTORNEY: "When you were arrested, did you tell anybody that you didn't do the shooting, Mr. Parks did?"

COUNSEL FOR THE DEFENDANT: "I object.   I withdraw the objection."

\*       \*       \*

THE DEFENDANT: "No, I didn't."

ASSISTANT DISTRICT ATTORNEY: "You didn't?"

THE DEFENDANT: "No."

ASSISTANT DISTRICT ATTORNEY: "This is the first time since the shooting that you told anybody that Mr. Parks did the shooting and you didn't shoot the police officer?"

COUNSEL FOR THE DEFENDANT: "I object to the question, your Honor."

THE JUDGE: "You'd better come up."

COUNSEL FOR THE DEFENDANT: "Note my objection and exception to the question of the District Attorney, your Honor."

ASSISTANT DISTRICT ATTORNEY: "You were taken to the Charles Street Jail, were you sir, after your arrest?"

THE DEFENDANT: "After I was arrested, I was in Station 2."

ASSISTANT DISTRICT ATTORNEY: "And then you were taken to Charles Street?"

THE DEFENDANT: "After I came from court."

during his trial but also upon arrest and while in custody, is a rule so fundamental as to require little elaboration. Constitution of the United States, Amendment 5. *Miranda* v. *Arizona*, 384 U. S. 436, 458-461 (1966). Massachusetts Declaration of Rights, art. 12. As a corollary of this principle, the prosecution is not permitted to cite a defendant's failure to testify at trial as evidence of his guilt. It is recognized that to allow such comment would impermissibly burden the defendant in the exercise

ASSISTANT DISTRICT ATTORNEY: "Yes, I'm sorry. And down at Charles Street, while you were there — just answer these questions yes or no: You [saw] police cars down there and the guards down there, the men who run Charles Street?"

THE DEFENDANT: "Yes."

ASSISTANT DISTRICT ATTORNEY: "The men who are in uniform?"

THE DEFENDANT: "Yes."

ASSISTANT DISTRICT ATTORNEY: "You knew what you were arrested for, didn't you?"

THE DEFENDANT: "Yes."

ASSISTANT DISTRICT ATTORNEY: "Did you have any conversation with anybody down at Charles Street — just answer this yes or no — concerning this shooting?"

COUNSEL FOR THE DEFENDANT: "I object."

ASSISTANT DISTRICT ATTORNEY: "Just answer it yes or no, if you can."

THE JUDGE: "I will allow it."

COUNSEL FOR THE DEFENDANT: "Exception, your Honor."

THE DEFENDANT: "No."

ASSISTANT DISTRICT ATTORNEY: "No?"

THE DEFENDANT: "No."

ASSISTANT DISTRICT ATTORNEY: "I will go back to my initial question: This is the first time that you told the story to this jury about Charles Parks, isn't it?"

COUNSEL FOR THE DEFENDANT: "I object to the question."

THE JUDGE: "Overruled."

COUNSEL FOR THE DEFENDANT: "Exception."

THE JUDGE: "What is your answer?"

THE DEFENDANT: "Yes."

of his constitutional rights. *Griffin* v. *California,* 380 U. S. 609 (1965). See St. 1866, c. 260, now G. L. c. 233, § 20, Third.

In the case at bar the defendant did testify at his trial, and it was his failure to volunteer information to police and custodial officers prior thereto which was the subject of adverse comment. In effect, the Commonwealth sought to require the defendant to assert his innocence immediately or not at all. Such methods cannot be approved, for they contravene the provisions of the Federal and Massachusetts constitutions and the public policy of this Commonwealth as declared in its statutes.

The practice of impeaching a defendant by calling attention to his silence prior to trial was held to be improper by the Supreme Court in *Grunewald* v. *United States,* 353 U. S. 391, 415-424 (1957), a case which involved comment on a defendant's refusal to answer questions before a grand jury. Although the court there rested its decision on the limited ground that such a refusal was not inconsistent with a later assertion of innocence, it also took note of the "grave constitutional overtones" inherent in the case. *Id.,* at 423-424. Later decisions have held the practice improper because it has the effect of penalizing a defendant for exercising his Fifth Amendment right to remain silent. See *Fowle* v. *United States,* 410 F. 2d 48 (9th Cir. 1969); *United States* v. *Tillman,* 470 F. 2d 142, 143 (3d Cir. 1972), cert. den. sub nom. *McCants* v. *United States,* 410 U. S. 968 (1973); *People* v. *Ashby,* 8 N. Y. 2d 238, 241 (1960); *Commonwealth* v. *Dulaney,* 449 Pa. 45, 47-48 (1972). Comment on an accused's failure to speak at the time of his arrest has been disapproved for the additional reason that it may operate to punish a defendant for availing himself of his Sixth Amendment right to consult with counsel. See, e.g., *Fagundes* v. *United States,* 340 F. 2d 673, 677-678 (1st Cir. 1965).

Although we agree with the reasoning of the above-cited decisions, we would observe that the method of

cross-examination employed in this case is objectionable for the additional reason that it violates the policy embodied in St. 1912, c. 325, now G. L. c. 278, § 23. That section states that "[a]t the trial of a criminal case in the superior court, . . . the fact that the defendant did not testify at the preliminary hearing or trial in the lower court . . . shall not be used as evidence against him, nor be referred to or commented upon by the prosecuting officer." Section 23 was construed in *Commonwealth* v. *Morrison*, 1 Mass. App. Ct. 632, 636-637 (1973), to prohibit comment even for the limited purpose of attacking credibility. A preliminary hearing is a judicial proceeding at which the accused is entitled to the assistance of counsel, the presence of a neutral fact finder, and the opportunity fully to present his case. See *Myers* v. *Commonwealth*, 363 Mass. 843, 855-856 (1973). If an adverse inference may not be drawn from a defendant's silence in these circumstances, it necessarily follows that use may not be made of his failure to speak out upon arrest or while in jail, where most if not all of these guarantees are lacking.

The Commonwealth, in arguing that the prosecutor's questions were proper, relies upon the decision in *Harris* v. *New York*, 401 U. S. 222, 226 (1971), in which the United States Supreme Court held that "prior inconsistent . . . and conflicting statements" obtained in violation of a defendant's Fifth Amendment rights could be employed for the limited purpose of impeaching his testimony at trial. See also *Commonwealth* v. *Harris*, 364 Mass. 236, 238-239 (1973). For the reasons set forth in this opinion and in the *Grunewald* decision, at pp. 421-422, a defendant's failure to speak out at the time of his arrest cannot be considered "inconsistent" with a later claim of innocence. The rule established by *Harris* v. *New York*, does not, therefore, apply to the case at bar. See *Johnson* v. *Patterson*, 475 F. 2d 1066, 1068 (10th Cir. 1972), cert. den. 406 U. S. 926 (1972); *United States* v. *Holland*, 360

F. Supp. 908, 912-913 (E. D. Pa. 1973), aff'd 487 F. 2d 1395 (3d Cir. 1973).[3]

To hold that the admission of the prosecutor's questions was error does not end our inquiry, for the Commonwealth has argued that any mistake which may have been committed was harmless beyond a reasonable doubt. See *Chapman* v. *California,* 386 U. S. 18, 24 (1967); *Milton* v. *Wainwright,* 407 U. S. 371, 372 (1972). However, in the absence of circumstantial evidence or eye witnesses other than the police officers, the defendant's testimony concerning the incident was crucial to his defense. In these circumstances, it was error to permit the prosecutor to attack the defendant's explanation on the theory that it was a recent contrivance. This is particularly true in view of the emphasis placed on the defendant's silence in the judge's charge.[4] His conviction of assault with intent to murder must be reversed.

---

[3] Certain older Massachusetts decisions may be understood to approve the tactics employed by the Commonwealth in this case. See *Commonwealth* v. *Smith,* 163 Mass. 411, 432 (1895); *Commonwealth* v. *Galvin,* 310 Mass. 733, 748 (1942). Contrary to the circumstances of those cases, the defendant here had not been with counsel, and was not in the presence of an impartial body. He had, moreover, been informed by the police, pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 467-468 (1966), that he had the right to remain silent. The reasoning of those decisions is therefore not applicable here. We would be less than candid, however, if we did not express our doubt as to the continuing vitality of the *Smith* and *Galvin* cases in light of the decision in *Grunewald* v. *United States, supra.* See Leach and Liacos, Handbook of Massachusetts Evidence, p. 160. Contrast Wigmore, Evidence (McNaughton rev.) § 2273, n. 8.

[4] The instructions were in relevant part as follows:

"So for you the question is, one, in making up your minds whether it was Mr. Bennett, you will keep in mind whether Mr. Bennett chose to testify. He didn't have to. He has *no burden of proving his innocence,* but having testified, you will give due weight and consideration to his testimony, and you will give thought to what he says as to somebody else doing it. When was this first mentioned? *Has this been his consistent story throughout, or is it a recent story?* All that goes into helping you make up your minds what are the facts [emphasis added].

\* \* \*

The charge of assault and battery by means of a dangerous weapon (handcuffs) presents somewhat different considerations. Nothing in the assistant district attorney's cross-examination touched upon the defendant's failure to discuss the station house assault with police, and it is apparent that the incident itself was distinct from the earlier shooting. We are convinced that the prosecutor's improper questions concerning the shooting incident did not affect the jury's deliberations on the indictment for assault and battery by means of a dangerous weapon; the error was therefore harmless with respect to that indictment.

Our decision to reverse the defendant's conviction for assault with intent to murder renders unnecessary any discussion of his other assignment of error, which pertained to the judge's instructions to the jury. We must, however, consider the possible effect of the judge's instructions in the context of the indictment for assault and battery. A reading of the instructions reveals that they related only to the defendant's testimony concerning the shooting incident. With regard to the station house assault we are convinced beyond a reasonable doubt that the instructions, to the extent that they may have been erroneous, were harmless.

The judgment of conviction for assault with intent to murder is reversed and the jury's verdict on that indictment is set aside. The judgment of conviction for assault and battery with a dangerous weapon is affirmed.

*So ordered.*

---

"[W]ith regard to whether Bennett's story has been consistent throughout, that Mr. Parks did it, of course, as a matter of law, Mr. Bennett is under no obligation to say anything to anybody, and it is probably true and is true. *However, Mr. Bennett chose to take the witness stand, and once having taken the witness stand, he was open for examination and cross examination on all relevant points*" (emphasis added).