John Allen MINOR,
Petitioner-Appellant,

v.

Harold E. BLACK, Superintendent,
Respondent-Appellee.

No. 74–2242.

United States Court of Appeals,
Sixth Circuit.

Decided Dec. 8, 1975.

Argued April 21, 1975.

John Allen Minor, pro se.  Martin Baker, Cleveland, Ohio (Court Appointed —CJA), for petitioner-appellant.

1

Ed W. Hancock, Atty. Gen., Douglas E. Johnson, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before PHILLIPS, Chief Judge, and WEICK and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Petitioner-appellant, testifying at his state court trial on armed robbery and murder charges, asserted the alibi that he was home asleep. On cross-examination, the prosecutor elicited without objection from petitioner his failure, when arrested, to tell the police of his alibi, petitioner explaining his post-arrest silence as being "[o]n the advice of [his] attorney."[1] In his closing argument to the jury, the prosecutor, also without defense objection, emphasized:

"[H]ere's something that I do not understand and I've been at this game a long time. If you are wanted for a crime you didn't commit and you knew police were looking for you, any decent, good citizen would go to the police and say, 'I was at home in bed.' What happened here? Nearly a year later he comes up with this phony alibi —'I was at home in bed.' Now, I submit, think about that. If you are charged with an offense or if I am, or the judge is, why, the first thing we would do would be to go to the police —'Mr. Policeman, you're all wrong. I was at home in bed and my two sisters will tell you that'. . . . [But] not until a year later—'I'll tell you nothing'—not quoting the evidence literally

—'I'll tell you nothing. Prove it on me.' And he told them nothing on the advice of his counsel, and I'm not criticizing counsel, that was proper advice, and a year later—'I was home in bed.' . . . Some one is mistaken or not telling the truth." Trial transcript 87–88.

The state court jury convicted petitioner of armed robbery and murder, and petitioner was sentenced to two concurrent terms of life imprisonment. The state court of appeals affirmed the convictions, although "condemning" the prosecutor's closing argument that petitioner should have "go[ne] to the police" to explain his whereabouts. That court, however, found insufficient prejudice to petitioner's substantial rights to warrant reversal stemming from the prosecutorial argument that petitioner should have told the police of his alibi when he reported to the police three days after the commission of the crime, at least in the absence of timely objection to the argument: *Minor v. Commonwealth*, 478 S.W.2d 716, 718 (Ky.1971), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 563, 34 L.Ed.2d 517 (1972).

Thereafter, petitioner filed the instant petition for writ of habeas corpus challenging, *inter alia*, the closing argument as infringing upon his constitutional right to remain silent in the wake of police interrogation. The district court, examining the trial transcript and finding an evidentiary hearing unnecessary, dismissed the petition because the clos-

---

1. "Q. Now, tell this jury, please, if you have ever told between June 28th, 1968 and this good day June 11th, 1969 if you'd ever told the story before to anyone, including the police, that you were home this night asleep.

"A. Yes, well, I discussed it with my attorney.

"Q. I understand that. I'm asking if you told the police that night when you went to headquarters or if you ever told anyone besides your attorney until this good day that you were at home that night?

"Mr. Shobe: I will stipulate, Your Honor, that I advised my client not to discuss this with the police.

"Mr. Ousley: Oh, no, Mr. Shobe, I'm not saying anything about you. I'm just asking the question if he told anyone besides his attorney.

"The Court: Overruled. I'm going to let the witness answer.

"A. I hadn't discussed anything with anyone other than my lawyer.

"Mr. Ousley: I understand, that's what you are telling the jury. You did not tell the police a year ago this story that you're telling the jury today, did you?

"A. No, I—

"Q. On the advice of your attorney. I understand that; correct?

"A. Correct.

"Q. You never told anyone else; correct?

"A. Correct."

Trial Transcript 60–61.

ing argument "was fair comment on petitioner's credibility" and "not violative of his Fifth or Fourteenth Amendment rights."

On the instant appeal of that dismissal, petitioner claims, *inter alia,* that the cross-examination and closing argument infringed upon his constitutional right of due process and his constitutional privilege from compelled self-incrimination. Respondent counters that the cross-examination and closing argument were permissible because *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), has established that *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), "cannot be perverted into a license to use perjury by way of a defense." 401 U.S. at 226, 91 S.Ct. at 646.

Of course, had petitioner been convicted in a federal, rather than a state, court, the admission of evidence of his pre-trial silence presumably would have been reversible error. *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1075), "in the exercise of [the Court's] supervisory authority over the lower federal courts," invalidated cross-examination concerning pre-trial silence "under the circumstances of [that] case." *But see United States v. Grubb,* 519 F.2d 1405 (7th Cir. 1975), *petition for cert. filed,* 44 U.S.L.W. 3069 (July 25, 1975) (No. 75–137). *Hale* did not,[2] as we must, decide the constitutional issue, but many of the policy factors favoring the exercise of the federal courts' supervisory power, *to wit,* the prejudice and ambiguity of pre-trial silence, also favor holding that the admission of such testimony violates constitutional standards.

Unless *Harris* permits the cross-examination and argument as impeaching petitioner's credibility, such cross-examina-

tion and argument was error. *Miranda* explicitly recognized that

"it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [the individual] stood mute or claimed his privilege in the face of accusation." 384 U.S. at 468 n. 37, 86 S.Ct. at 1625 n. 37.

Moreover, this court, prior to *Harris,* had held that cross-examination of a defendant into his failure to inform law enforcement officials earlier of his exculpatory trial testimony was plain error "of constitutional magnitude." *United States v. Brinson,* 411 F.2d 1057 (6th Cir. 1969).

■ *Harris* permits statements elicited in violation of *Miranda,* and, arguably, silence in compliance with *Miranda,* to be admitted to impeach petitioner's credibility if, but only if, those statements or silence is sufficiently "trustworth[y]," "sharply contrast[ing]," or "inconsistent" with the testimony to be impeached. *Harris, supra,* 401 U.S. at 224–26, 91 S.Ct. 643. We hold that the instant cross-examination and closing argument was error of constitutional magnitude because, petitioner's silence not being sufficiently inconsistent with his trial testimony to permit the use of that silence to impeach his testimony, the admission of evidence of and comment on such silence violated petitioner's right to remain silent. As Judge Breitenstein framed the issue in a comparable case,

"The use of pre-trial silence for impeachment depends on whether, *in the circumstances presented,* there is such inconsistency between silence and testimony as to reasonably permit the use of silence for credibility impeach-

2. Even more recently, the Supreme Court denied certiorari in *People v. Moore,* 55 Mich. App. 678, 223 N.W.2d 302 (1974), *cert.denied sub nom. Michigan v. McFarland,* 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 112 (1975). The state's petition for certiorari presented the question whether the Fifth Amendment bars cross-examination of defendant concerning his invocation of the privilege against self-incrimi-

nation and resulting failure to offer arresting officers exculpatory information testified to at trial. The state court of appeals had held that such cross-examination was reversible error, the state court citing *People v. Bobo,* 390 Mich. 355, 212 N.W.2d 190 (1973), which founded the error on the "constitutional right to remain silent."

ment." Breitenstein, J., dissenting in *Johnson v. Patterson,* 475 F.2d 1066, 1070 (10th Cir.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973) (emphasis supplied). Other courts have similarly found such silence insufficiently inconsistent, *e. g., Deats v. Rodriquez,* 477 F.2d 1023, 1025 (10th Cir. 1973), *Patterson, supra,* 475 F.2d at 1068 ("[S]ilence at the time of arrest is not an inconsistent or contradictory statement. Silence at the time of arrest is simply the exercise of a constitutional right · . ."), *People v. Bobo,* 390 Mich. 355, 212 N.W.2d 190 (1973), *Sutton v. State,* 25 Md.App. 309, 334 A.2d 126, 130–133 (1975), *Commonwealth v. Bennett,* 317 N.E.2d 834 (Mass.App.1974), but see *United States v. Harp,* 513 F.2d 786, 790 (5th Cir. 1975), *United States v. Quintana-Gomez,* 488 F.2d 1246 (5th Cir. 1974), *United States ex rel. Burt v. State of New Jersey,* 475 F.2d 234, 237 (3rd Cir.), *cert. denied,* 414 U.S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973), *United States v. Ramirez,* 441 F.2d 950, 953–54 (5th Cir.), *cert. denied,* 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971), *Lebowitz v. State,* 313 So.2d 473 (Fla.App.1975), *State v. Mink,* 23 N.C.App. 203, 208 S.E.2d 522, *cert. denied,* 286 N.C. 340, 211 S.E.2d 215 (1974), *Commonwealth v. Jennings,* Pa.Super., 338 A.2d 598 (1975), especially with the suspect remaining silent knowing of his right to remain silent, *Hale, supra,* 95 S.Ct. at 2137 ("[Respondent] had just been given the *Miranda* warnings and was particularly aware of his right to remain silent and the fact that anything he said could be used against him. Under these circumstances, his failure to offer an explanation during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication. There is simply nothing to indicate which interpretation is more probably correct"), *United States v. Fairchild,* 505 F.2d 1378, 1382 (5th Cir. 1975) ("After [defendant] had been informed that he had the right not to speak until his lawyer was present he did what a reasonable man could be expected to do—he remained silent"), *Rothschild v. State of New York,* 388 F.Supp. 1346, 1350 (S.D.N.Y.), *aff'd on other grounds,* 525 F.2d 686 (2d Cir. 1975), 2042, 2d Cir., filed September 25, 1975), see *United States v. Tyler,* 505 F.2d 1329, 1333 (5th Cir. 1975), *United States v. Matos,* 444 F.2d 1071 (7th Cir. 1971), but see *Agnellino v. State of New Jersey,* 493 F.2d 714 (3rd Cir. 1974). Though neither the state court nor habeas corpus record reflects whether petitioner was told of his *Miranda* rights, there was uncontradicted evidence at his state court trial that petitioner's attorney had advised him to remain silent. See *Harp, supra,* 513 F.2d at 790 n. 7; *Commonwealth v. Jones,* 229 Pa.Super. 236, 327 A.2d 638, 643 (1974). Similarly, this court has recognized that silence often is, at best, ambiguous. See *Glinsey v. Parker,* 491 F.2d 337, 342 (6th Cir.), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2630, 41 L.Ed.2d 227 (1974) (holding that state defendants' silence in face of co-defendants' inculpating statements insufficient to constitute defendants' adoption of such statements because "[o]ne in custody has the right to remain silent and it would violate rights guaranteed by the Fifth Amendment to hold that such a person, by his silence, has acquiesced in a statement made by another in his presence which implicates him in a crime"); *Luallen v. Neil,* 453 F.2d 428 (6th Cir. 1971), *cert. denied,* 409 U.S. 857, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972).

■ We, of course, have no supervisory rule over Kentucky criminal courts, and can disturb a state conviction only on the ground of constitutional error. Other courts, however, have found constitutional error in the admission of, and comment on, pre-trial silence for impeachment. E. g., *Deats, supra; Patterson, supra; Bobo, supra; Bennett, supra;* see *Brinson, supra.*

■ The failure of petitioner, or his counsel, to timely object at trial to the admission of, and comment on, pre-trial silence for impeachment, though precluding state appellate review, 478 S.W.2d at 718, cannot preclude federal habeas cor-

pus relief in the absence of even a suggestion that such failure, rather than being an inadvertent oversight,[3] was an attempted "deliberate bypass" of state court procedure. *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Deats, supra,* 477 F.2d at 1024. See also *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). Indeed, habeas corpus relief has been granted because of such admission and comment in the absence of objection. *Deats, supra; Patterson, supra;* see *Brinson, supra; United States v. Holland,* 360 F.Supp. 908, 910 (E.D.Pa.), *aff'd without published opinion,* 487 F.2d 1395 (3rd Cir. 1973). See also *Lebowitz, supra,* 313 So.2d at 476–477. But see *Egger v. United States,* 509 F.2d 745, 747 (9th Cir. 1975); *Fairchild, supra,* 505 F.2d at 1384; *United States v. Rose,* 500 F.2d 12 (2d Cir. 1974); *Ramirez, supra.* Those courts' willingness to review those convictions accords with the federal courts' general willingness to review the constitutionality of the admission of evidence, even in the light of failure to comply with a state requirement of contemporaneous objection. *Marshall v. Rose,* 499 F.2d 1163, 1164 n. 1 (6th Cir. 1974). See *Miranda v. Arizona,* 384 U.S. 436, 495 n. 69, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See generally White, Federal Habeas Corpus: The Import of the Failure to Assert a Constitutional Claim at Trial, 58 Va.L.Rev. 67 (1972). Though some courts of appeals have remanded to district courts for evidentiary hearings "upon the question of whether [petitioner] by-passed or waived his [constitutional] claim," e. g., *Pineda v. Craven,* 424 F.2d 369, 371 (9th Cir. 1970); *Smiley v. California,* 442 F.2d 1026 (9th Cir. 1971), *cert. denied,* 404 U.S. 1039, 92 S.Ct. 718,

30 L.Ed.2d 732 (1972), we see no reason for such remand where, as here, there is no suggestion, either in the record or in respondent's brief, of a "deliberate bypass." Accord, *United States ex rel. Macon v. Yeager,* 476 F.2d 613, 614–15 n. 2 (3rd Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973); see *Blaylock v. Fitzharris,* 455 F.2d 462, 464 (9th Cir.), *cert. denied,* 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218 (1972) (evidentiary hearing if "genuine" issue of deliberate bypass).

■■ We recognize that constitutional error in using pre-trial silence to impeach trial testimony may on occasion be harmless error. *Rothschild, supra, Holland, supra,* 360 F.Supp. at 913; see *Glinsey, supra,* 491 F.2d at 343–44. See generally *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, to find harmlessness beyond a reasonable doubt we would have to conclude that, absent the cross-examination and closing argument, "no juror could have entertained a reasonable doubt" as to petitioner's guilt. *Matos, supra,* 444 F.2d at 1073. We feel that we cannot in good conscience make such a finding. First, evidence of petitioner's guilt was far from being overwhelming, *Glinsey, supra,* 491 F.2d at 344, *United States v. Blakemore,* 489 F.2d 193, 196 (6th Cir. 1973), *United States v. Davis,* 459 F.2d 167, 172 (6th Cir. 1972). While we do not agree with petitioner's claim on appeal that the evidence against him "was so lacking in probative or evidentiary value as to deprive him of his due process rights," it must be recognized that the robbery victim's line-up identification of petitioner was far from conclusive,[4] and that the

3. The failure of petitioner's attorney to object to the cross-examination and closing argument underlies, in part, petitioner's claim, on the instant petition for a writ of habeas corpus, of ineffective assistance of counsel. The district court, however, found no "ineptness or negligence on the part of counsel which deprived the petitioner of any substantial defense," specifically noting that "[a]lthough defense counsel made no formal objection to the testimony pertaining to the lately-voiced alibi, counsel forcefully pointed out that his silence was on

counsel's advice." The instant appeal fails to challenge that finding of the district court.

4. The surviving robbery victim initially identified a man other than petitioner out of a five-man line-up. It was only after the police informed the victim that the man he had chosen could not possibly have committed the crime, that he said "the No. 3 man [petitioner] looks like the one who pulled the trigger." Trial Transcript 32. The victim's explanation was that originally he was looking for petitioner's co-defendant.

only other inculpatory evidence was the testimony of an acquaintance that he saw petitioner near the scene of the robbery and murder within fifteen or twenty minutes thereof. Second, evidence of petitioner's pre-trial silence could easily have been prejudicial.

"The danger is that the jury, is likely to assign much more weight to the defendant's previous silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury is likely to draw from the fact that the defendant remained silent at the time of his arrest." *Hale, supra,* 95 S.Ct. at 2138.

The judgment of the District Court is reversed and the case is remanded with instructions to grant the writ of habeas corpus unless the state proceeds to retry petitioner within a reasonable time, but to await the outcome of any proceedings taken by the state to the Supreme Court.

WEICK, Circuit Judge (dissenting).

Minor was convicted by a jury in the state court for armed robbery and murder. The prosecution's case rested upon an in-court identification of Minor as one of the assailants by Hugh Albright, an eye witness, and testimony of Ronald McGoffney, who testified that he saw Minor near the scene of the crime shortly before it occurred. Minor's defense consisted of an alibi that he was home asleep at the time of the incident in question. This alibi was corroborated by two of his sisters and an aunt.

Following his conviction, Minor did not take a direct appeal. However, he subsequently filed a motion to vacate the judgment and conviction pursuant to Rule 11.42 Kentucky Rules of Criminal Procedure. This motion was overruled, but a belated appeal was granted.

In his belated appeal, Minor presented two arguments in an effort to reverse his conviction. First, he contended that the evidence presented was insufficient to support the jury's verdict; and second, he contended that he was prejudiced by the prosecuting attorney's closing argument which referred to his failure to communicate his alibi story to police at the time of his arrest.

The Kentucky Court of Appeals affirmed the judgment of conviction. *Minor v. Kentucky,* 478 S.W.2d 716 (Ky. 1971), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 563, 34 L.Ed.2d 517 (1972), 415 U.S. 929, 94 S.Ct. 1439, 39 L.Ed.2d 487 (1974).

Minor then filed with the District Court a petition for a writ of habeas corpus.

The District Court denied his petition without an evidentiary hearing. Minor appealed to this Court.

Because we were unable to determine whether the District Court had the benefit of the record and transcript of the proceedings in the state courts, we remanded the case for additional proceedings and a determination of petitioner's rights either based on an examination of the record of the state court proceedings or an evidentiary hearing.

After examining the record of the state court proceedings which it held was adequate, the District Court again denied the petition, concluding that there had not been a deprivation of constitutional rights and that an evidentiary hearing was not required.

We granted Minor's motion to proceed on appeal *in forma pauperis,* and his application for a certificate of probable cause. We also appointed counsel.

Minor's principal claim of error relates to the prosecutor's cross-examination of him concerning his failure to inform the police about his alibi at the time of his arrest and the prosecutor's comments thereon in his closing argument.

When Minor learned that the police were looking for him he reported to the police station with his lawyer. Minor was asked if he desired to make a statement and his reply was that his lawyer had advised him not to give a written statement. The record does not show that he was even given *Miranda* warnings.[1]

---

1. *Miranda v. Arizona,* 384 U.S. 436, 467–73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The cross-examination by the prosecutor was as follows:

Q. Now, tell this jury, please, if you have ever told between June 28th, 1968 and this good day June 11th, 1969 if you'd ever told the story before to anyone, including the police, that you were home this night asleep.

A. Yes, well, I discussed it with my attorney.

Q. I understand that. I'm asking if you told the police that night when you went to headquarters or if you ever told anyone besides your attorney until this good day that you were at home that night?

Mr. Shobe: I will stipulate, Your Honor, that I advised my client not to discuss this with the police.

Mr. Ousley: Oh, no. Mr. Shobe, I'm not saying anything about you. I'm just asking the question if he told anyone besides his attorney.

The Court: Overruled. I'm going to let the witness answer.

Witness: I hadn't discussed anything with anyone other than my lawyer.

Mr. Ousley: I understand, that's what you are telling the jury. You did not tell the police a year ago this story that you're telling the jury today, did you?

A. No, I . . . . .

Q. On the advice of your attorney. I understand that; correct?

A. Correct.

Q. You never told anyone else; correct?

A. Correct.

In his closing argument to the jury the prosecutor stated:

And here's something that I do not understand and I've been at this game a long time. If you are wanted for a crime you didn't commit and you knew police were looking for you, any decent, good citizen would go to the police and say, 'I was at home in bed.' What happened here? Nearly a year later he comes up with this phony alibi

. . . 'I was at home in bed.' Now, I submit, think about that. If you were charged with an offense or if I am, or the Judge is, why, the first thing we would do would be to go to the police . . . 'Mr. Policeman, you're all wrong. I was at home in bed and my two sisters will tell you that.' But, oh no, McGoffney, who was down there, told the police he saw two men. The police immediately draw these two mugs. Of course! Good police work. And not until a year later—'I'll tell you nothing'—not quoting the evidence literally—'I'll tell you nothing. Prove it on me.' And he told them nothing on the advice of his counsel, and I'm not criticizing counsel, that was proper advice, and a year later—'I was home in bed.' And who says he was home in bed? I'm not going to comment. His good aunt, who, of course, didn't see him after 10:00 o'clock on the 27th, and his two sisters. Someone is mistaken or not telling the truth.

Minor did not object either to the cross-examination or the prosecutor's argument to the jury. Under Kentucky law he is deemed to have waived objection and appellate review is precluded. *Minor v. Kentucky, supra. Cf., Johnson v. United States,* 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943).

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), after concluding that a defendant had the right to be advised that he could maintain silence in the face of police interrogation, the Court went on to state at 468 n. 37, 86 S.Ct. at. 1625:

[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. *Cf., Griffin v. State of California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] (1965); *Malloy v. Hogan,* 378 U.S. 1, 8 [84 S.Ct. 1489, 1493, 12 L.Ed.2d 653] (1964) . . . . .

Relying on this dictum in *Miranda*, we held in *United States v. Brinson*, 411 F.2d 1057 (6th Cir. 1969), that cross-examination and comment, of the sort in question in the present case, were prejudicial error of constitutional magnitude. We stated at 1060:

Brinson's silence was not offered in evidence as a tacit admission in response to an accusatory statement. Nevertheless, he had the same right to remain silent following his arrest . . . . Since he had no duty to disclose his defense to any law enforcement officer or prosecuting authority, permitting the inquiry pursued at trial by the United States Attorney was error of constitutional magnitude . . . .

Other Circuits reached the same conclusion. *E. g., United States v. Semensohn*, 421 F.2d 1206 (2nd Cir. 1970); *Fowle v. United States*, 410 F.2d 48 (9th Cir. 1969); *Gillison v. United States*, 130 U.S. App.D.C. 215, 399 F.2d 586 (1968).

Respondent argues that our decision in *Brinson* has been eroded by the decision of the United States Supreme Court in *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), which held that a defendant could be impeached by prior inconsistent utterances made at the time of arrest, even though the utterances were made before the defendant had been advised of his *Miranda* rights.

The basis for respondent's contention is that Minor's silence at the time of his arrest was inconsistent with his subsequent alibi testimony, thereby justifying comment on his prior silence for impeachment purposes.

In *United States v. Ramirez*, 441 F.2d 950 (5th Cir.), *cert. denied*, 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113, *rehearing denied*, 404 U.S. 987, 92 S.Ct. 445, 30 L.Ed.2d 371 (1971), the Fifth Circuit applied the *Harris* rationale to include the right of the prosecution to impeach the defendant by a prior inconsistent act of remaining silent at the time of arrest. The *Ramirez* rationale was subsequently followed by the Third Circuit. *United*

*States ex rel. Burt v. New Jersey*, 475 F.2d 234 (3rd Cir.), *cert. denied*, 414 U.S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973); *Agnellino v. New Jersey*, 493 F.2d 714 (3rd Cir. 1974).

The *Ramirez* rationale was rejected by the Tenth Circuit and the Circuit Court of Appeals for the District of Columbia. *Johnson v. Patterson*, 475 F.2d 1066 (10th Cir.), *cert. denied*, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973); *Deats v. Rodriquez*, 477 F.2d 1023 (10th Cir. 1973); *United States v. Anderson*, 162 U.S.App.D.C. 305, 498 F.2d 1038 (1974); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

*Hale* was affirmed by the Supreme Court but not on the ground that there had been a violation of his constitutional rights. The court, exercising its supervisory powers over the administration of justice in the federal courts, held that the cross-examination and comments of the prosecutor concerning Hale's prior silence constituted prejudicial error.

In a separate concurring opinion, Chief Justice Burger stated:

I cannot escape the conclusion that this case is something of a tempest-in-a-saucer and the court rightly avoids placing the result on constitutional grounds.

The highest court of Kentucky in affirming Minor's conviction, while not approving the prosecutor's closing argument to the jury, held that it was not prejudicial error.[2]

We do not possess supervisory powers over the administration of criminal justice in the Kentucky Courts. We are bound by its decision that the prosecutor's argument to the jury did not constitute prejudicial error under Kentucky law. *Herb v. Pitcairn*, 324 U.S. 117, 125–26, 65 S.Ct. 459, 89 L.Ed. 789 (1945).

*Brinson* did decide the constitutional issue. *Brinson* was a federal prosecution. *Minor* is a state prosecution. There is a real conflict in the Circuits on the constitutional issue. The conflict was not resolved in *United States v. Hale, supra*.

---

**2.** Apparently no question was raised in Kentucky's Court of Appeals about the cross-examination of Minor on this issue.

It should be pointed out that *Miranda* has no application to the present case. Here Minor voluntarily went to the police station accompanied by his retained counsel who had advised him not to give any information to the police and he gave them none.

At his trial he voluntarily took the witness stand to testify as a witness in his own behalf. He testified as to his alibi and the prosecutor cross-examined him in detail on this subject. In particular, he was cross-examined as to why he had not told the police about his alibi at the time of his arrest. He testified that he told no one except his lawyer in the period from the date of his arrest in 1968 until the trial nearly a year later.

A number of states have statutes requiring a defendant in a criminal case to give written notice of his alibi if he intends to use it as a defense at his trial. Kentucky has no such statute.

The Supreme Court held that the privilege against self-incrimination is not violated by a state statute requiring that a defendant give notice of his alibi defense and disclose his alibi witnesses. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The court noted that some sixteen states had adopted notice requirements and that they were designed to enhance the search for the truth by giving both the state and the defense the opportunity to investigate facts crucial to the issue of guilt or innocence. *Cf., United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

Minor could have avoided this issue entirely by not taking the witness stand. He could have offered his two sisters and his aunt as witnesses to establish his alibi. The state then could not have offered proof about any inconsistent act or conduct. *Oregon v. Hass,* 420 U.S. 714, 720–724, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). The trouble is that Minor apparently wanted to testify as a witness in his defense and to impress the jury with his testimony.

When Minor took the witness stand he was subject to cross-examination, the same as any other witness. The state had the right to impeach him by questioning him concerning any act or conduct on his part which was inconsistent with his testimony.

In *Oregon v. Hass, supra,* the Supreme Court followed *Harris v. New York, supra,* and held that inculpatory information furnished by a suspect in police custody (en route to the police station) after he had been given *Miranda* warnings, and had stated that he would like to telephone a lawyer, but was told that this could not be done until they reached the police station, can be used solely for impeachment purposes when the defendant takes the witness stand and gives testimony inconsistent with such information.

Whether Minor's conduct in remaining silent was inconsistent with his testimony was a question of fact which the trial judge in his discretion could submit to the jury for determination. See *United States v. Hale,* 422 U.S. at 180, n. 7, 95 S.Ct. 2133.

In 3A *Wigmore on Evidence* § 1042, the author states under the topic of "(1) Silence, etc., as constituting the impeaching statement."

> A failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact.

The Court of Appeals of Kentucky, after holding that the prosecutor's comments to the jury were not prejudicial, further stated:

> The defendant reported to the police three days after the date on which the crime was committed but did not testify until about one year later when his trial was conducted. But on his trial, he voluntarily took the witness stand and testified in his own behalf, *thereby waiving his right to remain silent.* So the Commonwealth's argument amounts to no more than to say that instead of giving his alibi to the jury at his trial, appellant should have given it to the police three days after the crime was committed. *(Emphasis added.)*

Furthermore, the appellant made no objection to that part of the argument

of the prosecuting attorney which pertained to his failure to go to the police and promptly report his alibi. Neither did the appellant move the court for a mistrial. Under these circumstances, we do not find that the appellant made sufficient objection on the trial to authorize appellate review. *Wise v. Kentucky Home Mutual Life Insurance Co.,* Ky., 420 S.W.2d 573 (1967).

Considering the argument from both angles, we do not think it was prejudicial to the substantial rights of the appellant.

Kentucky has the right to provide for the manner of appellate review for cases tried in its courts and the consequences for failure to follow its required procedures. It is not the function of federal courts to review state court appellate procedures. Fed.R.Crim.P. Rule 52(b) has no application to state prosecution.

As we have previously pointed out, the rulings of the federal courts have been conflicting on the issue of self-incrimination.

In *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), Mr. Justice Stone who wrote the opinion for the court stated:

> The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf, and not for those who do.

The court held that when the defendant became a witness he waived his Fifth Amendment rights.

It has been claimed that *Johnson v. United States,* 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), has overruled *Raffel* but I do not so read it. *Johnson* did hold that the withdrawal of an exception to the prosecutor's argument operated as a waiver of objection. This is equivalent to not making any objection, which is what happened here. *Johnson* conforms to Kentucky law.

*Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), distinguished *Raffel* and focused on the question whether there was any inconsistency between the refusal of the defendant to answer questions before the Grand Jury and his testimony at the trial. As we have stated, this was an issue which the state court in the present case determined adversely to Minor.

Finally, in *United States v. Hale, supra,* these authorities are further analyzed with the result that the Court declined to pass upon the constitutional issue and ruled that under its supervisory powers the inquiry into Hale's silence constituted prejudicial error.

The Kentucky Court of Appeals had the right to decide whether the comments of the prosecutor constituted prejudicial error under Kentucky law and also whether the issue was properly before the court for appellate review. I find no error of constitutional dimensions in the decision of the Court of Appeals of Kentucky which held that the issue was not properly before the court for appellate review or in its failure to find prejudicial error in the argument of the prosecutor. Where the decision of the state court rests in part on adequate and independent state grounds the federal courts are not privileged to review it. *Herb v. Pitcairn,* 324 U.S. 117, 125–26, 65 S.Ct. 459, 89 L.Ed. 789 (1945); *Oregon v. Hass, supra,* dissenting opinion of Justice Marshall.

The overwhelming evidence in this case supports the jury verdict of guilty of murder and robbery. In my opinion Minor received a fair trial. He also received appellate review of his conviction by Kentucky's highest court, which held:

> Minor voluntarily took the witness stand and testified in his own behalf thereby waiving his right to remain silent . . . .

*Cf., Raffel v. United States, supra.*

Minor was subject to cross-examination about his acts and conduct, the same as any other witness. The Kentucky Court was also within its rights in holding that Minor, by his failure to object at the trial, either to the cross-examination or to the prosecutor's argument to the jury, was not entitled to appellate review.

In my opinion federal intervention is this case by the writ of habeas corpus is not authorized. The District Judge properly denied the writ, and I would affirm.