**Vincent K. LEAKE, Appellant,**

v.

**J. D. COX, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 14227.**

United States Court of Appeals,
Fourth Circuit.

Argued July 24, 1970.

Decided Oct. 8, 1970.

R. Gordon Smith, Richmond, Va., and H. Lane Kneedler, Charlottesville, Va. (court-assigned), for appellant.

Vann H. Lefcoe, Asst. Atty. Gen. of Va., (Andrew P. Miller, Atty. Gen., and Edward J. White, Asst. Atty. Gen., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

The petitioner, a state prisoner convicted of forging and uttering, sought a writ of habeas corpus on the ground that his constitutional rights were violated when at his trial evidence was adduced that after his arrest he refused to give handwriting exemplars or to make an oral statement, and the prosecutor argued to the jury that these refusals constituted evidence of guilt. The district judge accepted a state court determination that the prosecutor's argument referred only to the refusal to give handwriting exemplars, and he denied the writ. We will assume, without deciding, that the challenged evidence was inadmissible on constitutional grounds. We are satisfied to affirm on the authority of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284 (1969), irrespective of the interpretation given to the prosecutor's argument.

I

Petitioner's trial was held on March 29, 1967. Petitioner's complaint is that during its course, Detective Phillips, the arresting officer, testified as a prosecution witness with regard to post-arrest events; and in the course of narrative chronology of police involvement, he said:

At the time that he [petitioner] was arrested, he was advised of his rights. Mr. Lewis, the magistrate of the City of Richmond, advised him of his rights, at 1:05 p. m. while I was present and he said he did not want to make any statement after he had been advised of his rights. I asked him if he would like to give me some hardwriting that I might like to send away to the FBI Laboratory for handwriting analysis, and he said no.

No objection was lodged to this particular testimony after it was given; nor was any motion made to strike any part, although objection was made and overruled with regard to other aspects of the detective's narrative.

In argument to the jury, the prosecutor made this statement:

> Gentlemen, you heard the testimony [of Detective Phillips] on the stand that this man refused to give his handwriting. It is true he did not have to give it. He did not have to give any statement, and he did not do it. But, on the contrary, what is the action of a man who finds himself in that position? You have to decide that. You have to decide that, and that is one of the features of this case.

Objection was lodged to this argument on the ground that it was improper to comment on petitioner's failure to agree to a handwriting test. The theory of the objection was that petitioner was not required to give his handwriting and there was no evidence that handwriting samples could not be obtained from other sources. The objection was overruled. A subsequent motion for mistrial based upon the same contention was also denied.

The testimony and the argument occurred in the course of a one-day trial. The Commonwealth's other evidence showed that a forgery ring had operated in the City of Richmond and at least twenty-seven forged checks had been drawn on State Planters Bank and paid. The scheme had been perpetrated by obtaining possession of a genuine check drawn by the High Constable of Richmond, countersigned by another authorized signer, to the order of Patricia Stanley, representing the proceeds from the sale of an automobile under judicial process in excess of the amount of the judgment the automobile was sold to satisfy. Having obtained possession of it, petitioner and others took the check to a printer and furnished him with paper and a photographic negative of the check. The printer printed similar blank checks with a plate prepared from the negative and delivered them to petitioner's apartment. The printer was paid $150 by petitioner for his services.

After the blank checks were delivered, petitioner and a certain Fred Powell took the blank checks and the Stanley check to the apartment of a certain Goldie Bennett. The three sat at the kitchen table and filled them out. Goldie Bennett inserted the names of fictitious payees and supplied the counter signature. Petitioner forged the signature of the High Constable on some of the checks. Petitioner gave Goldie Bennett a driver's license and a charge plate in the name of one of the payees and directed her to cash the checks. Goldie Bennett then toured various branches of the State Planters Bank and cashed checks. Over $4,000 in aggregate was obtained from between eight and fourteen bank branches. Of this sum, $2,500 went to pay an attorney's fee for the defense of Powell on other charges. The identity of the group effecting the forging and uttering was apparently uncovered because the bank had photographs of Goldie Bennett cashing checks at its branches. Payment of his fee was corroborated by the attorney for Powell.

The evidence we have summarized was adduced principally from Goldie Bennett and the printer. Both had been charged in connection with the episode. Both had previously committed other crimes, the printer as a juvenile, and Goldie Bennett had other check cashing charges pending against her. Petitioner, a previously convicted felon, testified in his own behalf. He offered no alibi, but he denied forging any of the twenty-seven checks in question. He testified to possible bias on the part of Goldie Bennett because of his interference with an illicit relationship between her and Powell. He denied ever meeting the printer and claimed that the printer had given false testimony to obtain leniency in the case pending against him.

Petitioner was found guilty and sentenced to sixteen years in the Virginia State Penitentiary. He appealed to the

Virginia Supreme Court of Appeals but his appeal was denied. Leake v. Commonwealth, 208 Va. xc (1967). Certiorari to the Supreme Court of the United States was also denied, Leake v. Virginia, 391 U.S. 953, 88 S.Ct. 1856, 20 L.Ed.2d 866 (1968).

Petitioner has exhausted his available state remedies. He sought a writ of habeas corpus, which was denied after plenary hearing by the Hustings Court for the City of Richmond, Part II, and his petition for a writ of error to the Virginia Supreme Court of Appeals was also denied. Leake v. Peyton, 209 Va. lxix (1969). The Hustings Court ruled that the disputed testimony of Detective Phillips and the argument of the prosecutor referred only to "handwriting."

When petitioner sought a writ of habeas corpus from the district judge, he concluded that the state court proceedings were adequate under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963). He accepted the finding of the Hustings Court that the prosecutor's argument referred only to petitioner's failure to furnish a handwriting exemplar and not to his decision to remain silent following his arrest. He ruled that, since exemplars were not protected by the fifth amendment guarantee against self-incrimination, there had been no error by the trial court in permitting the prosecutor to comment upon petitioner's failure to furnish an exemplar.

## II

We assume, without deciding, that admission of the evidence that petitioner declined to give an oral statement and that argument that his refusal was evidence of guilt (if, as petitioner contends, the prosecutor's argument be so interpreted) constituted a violation of constitutional right under Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106 (1965), and Miranda v. Arizona, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We also assume, without deciding, that the same is true with regard to

testimony concerning the refusal to give handwriting exemplars and the prosecutor's argument (if it be interpreted as found by the state habeas judge and the district judge) that this was evidence of guilt. See Schmerber v. California, 384 U.S. 757, 765, n. 9, 86 S. Ct. 1826, 16 L.Ed.2d 908 (1966). Nevertheless, we cannot read the record as permitting any reasonable doubt that, absent the tainted evidence and argument, fair-minded jurors could not have acquitted petitioner. Viewed as a whole, the incriminating evidentiary value of petitioner's refusal to make an oral or written statement and his refusal to give handwriting exemplars was merely cumulative of the overwhelming evidence of his guilt. Argument based thereon was minimal. We are thus constrained to conclude that the tainted evidence and argument, if any, constituted harmless error. Chapman v. California, *supra*; Harrington v. California, *supra;* see also Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Note, Harmless Constitutional Error; A Reappraisal, 83 Harv.L.Rev. 814 (1970).

Affirmed.