**UNITED STATES of America,
Appellee,**

v.

**Willie WILLIAMS, Appellant.**

**No. 191, Docket 75–1206.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 2, 1975.

Decided Sept. 26, 1975.

Jonathan J. Silbermann, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City), for appellant.

Jeremy G. Epstein, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John P. Flannery, II, and John C. Sabetta, Asst. U. S. Attys., of counsel), for appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

On April 23, 1975, in the United States District Court for the Southern District of New York, John M. Cannella, Judge,

appellant Willie Williams was found guilty by a jury on a single count of attempted bank robbery in violation of 18 U.S.C. § 2113(a). On May 28, 1975, Williams was sentenced to five years imprisonment. Williams appeals the judgment of conviction on multiple grounds. First, he claims that the introduction of testimony concerning his post-arrest, pretrial refusal to answer questions requires reversal on the grounds that he was consequently denied his Fifth Amendment right of protection against compulsory self-incrimination. Second, he asserts that reversal is necessitated by the refusal of the district court to hold, pursuant to 18 U.S.C. § 3501(a),[1] a hearing outside the presence of the jury on the admissibility of an allegedly involuntary statement by Williams and by the subsequent failure of the court to instruct the jury appropriately with respect to both the issue of the voluntariness of the statement and the relevance of the voluntariness issue to the statement's probative value. Finally, Williams contends that his conviction should be overturned because the court commented improperly on the statement in its instructions to the jury. For the reasons hereinafter outlined, we affirm the conviction.

At the trial, a bank teller, Edna Rosa, gave the following testimony. While she was taking care of customers, an individual, whom she later identified as Williams and who had been waiting in line, approached her with a dollar bill in one hand and a piece of paper in the other. He said, "Change this." Rosa inquired, "What?" Williams responded, "This," and pushed forward, not the bill, but the piece of paper. On it were written the words, "Pase [sic]—the money." After starting to fill a bag with money, Rosa ducked under the counter and activated three surveillance cameras by pressing an alarm button. The bank's head teller testified that she was standing ten feet from Rosa when she saw Williams pass a piece of paper to Rosa. She also testified that she saw Williams leave through the bank's Park Avenue exit and that she wrote down his physical description while following him north on Park Avenue, and then west on Fifty-Second Street up to the bank's Fifty-Second Street entrance. Glen Mahon, a mail clerk at the bank, stated that he had been directly behind Williams in the line to Rosa's window and that he saw Williams' face both as Williams turned to leave and as Williams walked toward the bank's Park Avenue exit. Mahon testified further that he then noticed Rosa's disappearance and that he accordingly told another mail clerk, Gary Stewart, who had been waiting for him, to "get the guy who just left." Stewart testified that he had previously noticed Williams waiting in line and that, in accordance with Mahon's instructions, he pursued Williams and succeeded in apprehending him on Fifty-Second Street. Mahon testified that he followed Stewart to Williams. Stewart stated that he asked Williams whether Williams had just left the bank and that Williams responded by denying that he knew what Stewart was talking about. According to Rosa, Williams was brought back to her "station," where she identified him as the individual who had passed her the note. Mahon testified that at that point Williams was clutching a dollar bill in his hand. The government buttressed its

---

1. 18 U.S.C. § 3501 provides in pertinent part:

    (a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

    \*    \*    \*    \*    \*    \*

    (e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

witnesses' testimony by entering into evidence both the note which, in its entirety, read, "You are covered. Pase [sic]— the money," and the photographs taken by the surveillance cameras which had been activated by Rosa. These photographs recorded unmistakably both Williams' departure from the bank and his return to it.

FBI Agent Michael McHale testified that he and another agent arrested Williams after the agents had been summoned to the bank. McHale also told the jury that at two different times Williams was informed of his *Miranda* rights and that, except for providing certain background information, Williams declined each time to make a statement in the absence of a lawyer. After the cross-examination of McHale by defense counsel, the trial court sua sponte instructed the jury that it should draw *no* inference from Williams' post-arrest refusal to answer questions. Finally, over defense objection, McHale was allowed to testify that, while being fingerprinted, Williams stated, "I did not rob any bank . . . I was only there to change a dollar bill." After making his objection and prior to the admission of this testimony, defense counsel had requested that the court hear this part of the agent's testimony outside the presence of the jury in order to resolve the issue of the voluntariness of Williams' statement and, therefore, the dependent issue of the admissibility of the agent's testimony regarding this statement. Instead, the court listened to an offer of proof by the government, found that the statement had not been coerced, and denied defense counsel's request for a hearing. Moreover, in its instructions to the jury, the court did not direct it to make an independent determination as to the voluntariness of Williams' statement or to assess the statement's probative value in light of this determination. The court, however, made the following comment with respect to the statement in charging the jury on false exculpatory statements:

An exculpatory statement made by the defendant, in this area there is [sic] really two of them that have been referred to or that could be considered as exculpatory statements.

The first one was when . . . And then the other one is when he was in the FBI office and they were fingerprinting him, he said I went into the bank but I only went in to change a dollar. By the way, if that is a fact, where is the change to the dollar. How did he wind up with the bill out on 52nd Street if he went in to change a dollar as he said he did. Because he still had the dollar when they picked him up.

In any event, those are in the nature of exculpatory statements. If you believe they are false, then you may determine that the defendant has consciousness of guilt and he knows that he did something wrong and that he is using this statement to exonerate himself and possibly get off. That is a judgment for you to make, and you do that in evaluating the evidence.

Record at 279–80. Appellant made a timely objection to this comment, which now constitutes the basis for appellant's final contention of error.

We assume without deciding that the FBI agent's testimony that Williams refused to answer questions after being arrested and given a *Miranda* warning violated Williams' Fifth Amendment right to protection from compulsory self-incrimination. *E. g., Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Ghiz,* 491 F.2d 599 (4th Cir. 1974); *United States v. Mullings,* 364 F.2d 173 (2d Cir. 1966). Nevertheless, even if the admission of the testimony is assumed to constitute error, we conclude that this error was harmless, for we find beyond a reasonable doubt that the unchallenged evidence presented against Williams in his trial was sufficiently overwhelming to have precluded by itself the possibility

of his acquittal.[2] The teller and the head teller both identified Williams as the individual who had handed the teller the written demand for money. The two mail clerks both saw Williams while he was in line and as he departed. One of them even testified to the fact that Williams was clutching a dollar bill in his hand at the time of his apprehension. (This testimony, of course, further supports the identification of Williams as the individual who passed the teller the demand for money since, according to her testimony, this individual was holding the demand in one hand and a dollar bill in the other.) And, finally, the photographs taken by the surveillance cameras activated by the teller confirm the appellant's presence in the bank immediately after the demand for money was made.

Our conclusion beyond a reasonable doubt that the unchallenged evidence presented against appellant was sufficiently overwhelming to have precluded by itself the possibility of his acquittal applies likewise to the other claimed errors: one, that he was erroneously denied a hearing and jury instructions with respect to the issue of the voluntariness of his statement during his fingerprinting and, two, that the court commented improperly on this statement. Even if, like appellant's Fifth Amendment claim, these remaining contentions are assumed *arguendo* to be valid, the district court still committed no more than harmless error. Accordingly, we affirm.

**2.** See, *e. g.*, *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (violation of appellant's Sixth Amendment right of confrontation harmless beyond a reasonable doubt); *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (possible error in the admission of a challenged confession harmless beyond a reasonable doubt); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) (violation of appellant's right of confrontation harmless beyond a reasonable doubt); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (state prosecutor's comment on appellant's

failure to testify not harmless beyond a reasonable doubt); *Leake v. Cox*, 432 F.2d 982 (4th Cir. 1970) (possible violation of appellant's privilege against compulsory self-incrimination resulting from testimony concerning his post-arrest pretrial refusal to answer questions harmless beyond a reasonable doubt); *Boeckenhaupt v. United States*, 392 F.2d 24 (4th Cir.), *cert. denied*, 393 U.S. 896, 89 S.Ct. 162, 21 L.Ed.2d 177 (1968) (possible violation of appellant's privilege against self-incrimination resulting from testimony concerning his post-arrest, pretrial refusal to answer questions harmless beyond a reasonable doubt).