**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William E. EARL and James Lavelle Cupit, Defendants-Appellants.**

**No. 75–1275.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1975.

Decided Feb. 10, 1976.

Charles A. Saladino, Paducah, Ky. (Court appointed CJA), for defendants-appellants.

George J. Long, U. S. Atty., James H. Barr, Ronald E. Bogle, Asst. U. S. Attys., Louisville, Ky., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Defendants-appellants Earl and Cupit were convicted on a jury verdict in district court of transporting on February 12, 1974, from Tennessee to Kentucky one Page whom they allegedly had pre-

viously kidnapped for robbery. 18 U.S.C. § 1201 (Supp. IV 1974). Earl and Cupit were sentenced to life imprisonment.

Briefly, the undisputed facts are that Page, a serviceman, was returning by automobile to Fort Campbell from a music clinic in Dyersburg, Tennessee. Page offered appellants, then walking alongside the highway, or perhaps "hitchhiking," a ride, which they accepted. The government theory, as implicitly credited in the jury verdict, is that appellants at knifepoint seized control of Page's automobile in Tennessee, crossed into Kentucky, and bound Page with adhesive tape, leaving him bound and barefoot in a corn shed, or "barn," near Bardwell, Kentucky. Appellants contend, however, that after Page gave them a ride Page unsuccessfully made homosexual advances toward Cupit. The defense claims that Page, then barefoot, got out of his automobile with the threat that he was "going to the police [to] holler kidnap." Appellants admit that thereafter they drove Page's automobile from near Bardwell until their apprehension later February 12, 1974, near Mount Vernon, Illinois.

On appeal, appellants claim that the district court committed reversible error in admitting into evidence as exhibits certain tangible objects and the advice-of-rights forms appellants signed following their apprehension. We consider the admission of the advice-of-rights forms, and especially accompanying references in the transcript to appellants' pre-trial silence, to be the more serious of the claimed errors.

Though appellant's brief points only to the admission of the advice-of-rights forms, in classic form, and the district court's questioning, which elicited corroboration of appellants' pre-trial silence,[1] the record contains at least four other references to appellants' silence. Those other references during the government's case-in-chief[2] undercut the government attorney's attempt at oral argument to escape responsibility for having elicited evidence of appellants' silence. The government's trial attorney asked the arresting Illinois state trooper, "Did either of the [appellants] make any statement at that time?" The trooper, perfectly responsively, answered:

"[T]he Sheriff's office did have a consent form there for rights statements and Chief Deputy Hill read the statement to Mr. Cupit first with Mr. Earl out in the outer office and he asked him to sign it if he wanted to.

*"Mr. Cupit made the statement that he did not want to talk to anyone unless he had a lawyer or something to*

---

1. When the government attempted to introduce the advice-of-rights forms, defense counsel objected because "[t]here was nothing obtained by virtue of these rights forms and the only reason I can see them being introduced is for prejudicial purposes." Thereafter the district judge interrupted the direct examination of the government witness, an Illinois deputy sheriff.

   "[THE COURT]: *Did [appellants] make any statements to you or any admissions, Officer?*

   "THE WITNESS: No, sir.

   "[THE COURT]: *They didn't;* what is the purpose of this then?

   "[GOVERNMENT COUNSEL]: This is to advise Your Honor that they have been— they were aware of their constitutional rights at all times. And that the proper procedures were followed.

   "[THE COURT]: Well, the Trooper has already testified as to that; let's move along.

"[GOVERNMENT COUNSEL]: Fine, Your Honor."

Trial Transcript 129–130. (Emphasis supplied.)

2. Because the references to appellants' pre-trial silence came in the government's case-in-chief, and thereby prior to appellants' testifying, the government properly refrains from arguing that the admission of such references can be sustained as being the admission of prior inconsistent statements to impeach appellants' trial testimony. See *Minor v. Black,* 527 F.2d 1 (6th Cir. 1975). Moreover, *United States v. Hale,* 422 U.S. 171, 181, 95 S.Ct. 2133, 2139, 45 L.Ed.2d 99 (1975), "in the exercise of [the Court's] supervisory authority over the lower federal courts," presumably precludes references to pre-trial silence in federal trials, as here, even for impeachment.

that effect. . . ." Trial Transcript 113. (Emphasis supplied.)

In the same direct examination, the government trial attorney again asked, "Did you ask [Cupit], uh, who [a certain wallet] belonged to?" Again, the trooper's response, hardly surprisingly, referred to Cupit's silence.

"[I] may have asked him if . . . the name [in the wallet would be the name] he would be using or if that was his name because *he had stated that he did not want to answer any questions* and I advised him that I just needed to fill out an information sheet with reference to my arrest. . . ." Trial Transcript 114. (Emphasis supplied.)

Again, the government attorney questioned the trooper.

"Q. Now, did you interview Mr. Earl?

"A. When Mr. Cupit had given me the information in reference to the report that I filled out—when this information was completed he was taken back into the outer office and Mr. Earl was brought in.

"Mr. Earl was again read the rights waiver that Chief Deputy Hill had in his office. A tape recorder was on the table in plain view of everyone in the small room and *Mr. Earl did not say a word.* . . .

"Q. So, you did or did not conduct an interview at that time?

"A. We did not at any time except the same thing I had done with Mr. Cupit. I asked him if he would give me the information to fill out my forms and *he did make the statement then that he would not say anything as long as the tape recorder was on.*" Trial Transcript 115–116. (Emphasis supplied.)

The trooper, somewhat unresponsively, on cross-examination again mentioned appellants' silence. "*[T]he men did not want to talk,* all I was interested in was filling out the information sheets and then having them detained." Trial Transcript 118. (Emphasis supplied.)

The references to appellants' silence are clearly constitutional error. *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624–25 n. 37, 16 L.Ed.2d 694 (1966), explicitly recognized that

"it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

Accord, *United States v. Ghiz,* 491 F.2d 599 (4th Cir. 1974); *United States v. Guzman,* 446 F.2d 1137 (9th Cir. 1971), *cert. denied,* 404 U.S. 1022, 92 S.Ct. 697, 30 L.Ed.2d 672 (1972); *United States v. Matos,* 444 F.2d 1071 (7th Cir. 1971); *United States v. Wick,* 416 F.2d 61 (7th Cir.), *cert. denied,* 396 U.S. 961, 90 S.Ct. 436, 24 L.Ed.2d 425 (1969). See *United States v. Williams,* 523 F.2d 407 (2d Cir. 1975) ("assuming," without "deciding," that admission of trial testimony that defendant refused to answer questions was error). Moreover, that appellants' trial attorneys failed to "object or move to strike does not serve to waive this sort of error, nor does it excuse the failure of the judge to intervene and strike the offending testimony and instruct the jury to disregard it." *United States v. Ortiz,* 507 F.2d 1224, 1226 (6th Cir. 1974). See *Minor v. Black,* 527 F.2d 1 (6th Cir. 1975).

But, as this court recently recognized in *Minor, supra,* "constitutional error in using pre-trial silence . . . may on occasion be harmless error." 527 F.2d at 5. In contradistinction to *Minor,* the government never argued the appellants' silence to the jury. Where the error has been found to be prejudicial, and hence reversible, there usually has been such argument, often being extensive, and strongly-worded. See, e. g., *Minor, supra; Moye v. Paderick,* 526 F.2d 589 (4th Cir. 1975); *Fowle v. United States,* 410 F.2d 48, 49 n. 1 (9th Cir. 1969). But see *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), aff'g 162 U.S.App.D.C. 305, 498 F.2d 1038 (1974).

1148

Where evidence of guilt has been "overwhelming," *Ortiz, supra,* 507 F.2d at 1226, courts have found that erroneous references to pre-trial silence are harmless beyond a reasonable doubt. *Williams, supra; Leake v. Cox,* 432 F.2d 982, 984 (4th Cir. 1970); *Wick, supra.* Even with minimal closing argument reference to pre-trial silence, the error has been found to be constitutionally harmless, in light of "overwhelming" evidence of guilt. *Leake, supra,* 432 F.2d at 983, 984; *Wick, supra,* 416 F.2d at 62.

■ The government here presented overwhelming evidence of appellants' guilt of interstate kidnapping. While some of the evidence is not inconsistent with appellants' theory that Page left his car to "holler kidnap," the finding in the corn shed (or "barn") of the tape with hair and green fibers adhering to it shortly after Page reported the kidnapping virtually compelled the jury's acceptance of the government's theory. The fibers match those in a sweater admitted into evidence after having been identified as Page's, and the sweater bears what Page testified and the government contends were tape marks stemming from the binding of Page. The case against the appellants was further strengthened by evidence of Page's barefoot condition (it being the prosecution's contention that had Page freely stepped out of the automobile in February more than one-quarter mile from a telephone from where he could "holler kidnap," he would have worn his shoes), and by testimony of the arresting state trooper that Earl, upon being told he was to be searched, volunteered, "You will find the knife you are looking for in my front pocket." Under such circumstances, we conclude that the constitutional error was harmless beyond a reasonable doubt.

We have similarly analyzed appellants' claims of error in admitting into evidence as too "inflammatory" a knife, a straight razor, Page's sweater, and the adhesive tape, but we have found no

prejudicial error. See *United States v. Trantham,* 145 U.S.App.D.C. 113, 448 F.2d 1036 (1971); *United States v. Baker,* 419 F.2d 83, 86–87 (2d Cir. 1969), *cert. denied sub nom. DiNorscio v. United States,* 397 U.S. 971, 976, 90 S.Ct. 1086, 1096, 25 L.Ed.2d 265, 271 (1970); *United States v. Craft,* 407 F.2d 1065 (6th Cir. 1969).

Affirmed.