Echol Eugene HEAD, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

June 30, 1978.

Certiorari Denied by Supreme Court
Aug. 28, 1978.

W. Stanley Yarbro, Johnson City, for appellant.

Brooks McLemore, Jr., Atty. Gen., Robert L. DeLaney, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Jr., Dist. Atty. Gen., H. Greeley Wells, Jr., Asst. Dist. Atty. Gen., Kingsport, for appellee.

OPINION

TATUM, Judge.

The appellant, Echol Eugene Head, was convicted of bank robbery and sentenced to

not less than twenty years nor more than twenty-five years in the State Penitentiary. He assigns error attacking the weight of the evidence, the admission of evidence of his silence at the time of apprehension, the admission of evidence of a prior felony conviction, and the competence of his trial counsel. We affirm the judgment of conviction.

The State's theory is that the appellant aided and abetted Dewey Scott Frazier in the robbery of the Plaza Branch of the First National Bank of Sullivan County by driving the "get-away" car. Shortly before the bank's 4:00 o'clock closing time, Dewey Scott Frazier entered the bank alone and robbed the bank employees of $4,014 by use of a .22 caliber pistol. During the course of the robbery, Frazier's gun discharged, wounding one of the bank employees.

While the robbery was in progress, the appellant waited outside the bank in a white Corvair automobile with the motor running. The license plate on the Corvair was bent downward so as to conceal the numbers on it. The Corvair was registered in the name of the appellant's wife.

After the robbery, Frazier ran to the automobile, carrying a brown paper sack containing the money taken in the robbery. The appellant commenced driving off "real fast" before Frazier could get completely in the car.

The police were alerted immediately and given a description of the appellant's car. After recognizing the appellant's car, a police car pursued it, but it stopped shortly. Frazier left the car from the passenger side with the money and the pistol. After Frazier left, the automobile again moved forward, but a police car stopped it by pulling in front of it. When the Corvair was stopped by the police, the license plate had been straightened, but the crease was still apparent.

The appellant's version of the event was that on the morning of the bank robbery, he visited a woman with whom he was enamored, named Nina Waye, a sister of Dewey Scott Frazier. He spent several hours working on Ms. Waye's automobile, drinking with her and other visitors at her home, including Frazier. About 3:15 P.M., the appellant took Frazier to a liquor store to purchase more liquor. Then, Frazier asked the appellant to take him to the bank to borrow money. The appellant remained in his automobile with the motor running while Frazier went into the bank, because the Corvair would not start once the motor had stopped running. The appellant did not know that Frazier was armed with a pistol or that Frazier intended to rob the bank. The appellant testified that when Frazier left the bank, he got into the Corvair with the bag and the money. Frazier stuck the pistol into the appellant's ribs and ordered the appellant, "Get me the hell out of here, that I've shot a woman in the bank and I've robbed it."

The appellant testified that he did not attempt to escape from the police after Frazier left his automobile. He said that his foot slipped off the brake, hitting the accelerator, causing his car to move forward. He made no complaint that Frazier victimized him until he testified in his own behalf at his trial.

In his first two assignments, the appellant says that the evidence preponderates against the jury verdict and that the verdict of the jury and judgment of the court is contrary to law. We do not agree. On appeal, a defendant is presumed guilty of the offense for which he was convicted and we cannot reverse a conviction on the evidence unless it appears that the evidence preponderates against the defendant's guilt and in favor of his innocence. *State v. Sneed,* Tenn., 537 S.W.2d 699 (1976); *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826 (1909). Conflicts in testimony and credibility of witnesses are settled by a jury verdict. *State v. Grace,* Tenn., 493 S.W.2d 474 (1973); *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57 (1962). On appeal, this court will view the evidence, together with all reasonable and legitimate inferences therefrom, in the strongest light consistent with the State's theory of guilt. *State v. Thompson,* Tenn., 549 S.W.2d 943 (1977); *State v. Grace, supra.* Applying these rules, we

must overrule the first two assignments of error.

The appellant's third assignment of error is: "The learned trial court erred in allowing the State, in its cross-examination of the appellant, to question and interrogate him concerning his invoking the Fifth Amendment of the United States Constitution at the time of his arrest and at the trial of Dewey Scott Frazier." [1] No reference was made by the State to the appellant's silence at the time of arrest until the appellant's cross-examination. We quote portions of the record to illustrate the character of questions asked the appellant on cross-examination, of which he now complains:

Q. Mr. Head, your testimony àt this point____it's my understanding that you're saying now that you were, in fact, a victim of a crime yourself at the hands of Dewey Scott Frazier. Is that right?

A. Repeat that again. I don't understand that.

Q. As I understand your testimony at this time and this is the first time I've ever talked to you, isn't it?

A. Yeah.

Q. As I understand your testimony at this point you are taking the position that you were, in fact, the victim of the crime of being held as a hostage by Dewey Scott Frazier in his attempts to escape the law.

A. Yes, sir.

Q. And that's what you're telling this jury?

A. Yes, sir.

    \*    \*    \*    \*    \*    \*

Q. Today is the first time you've ever made a complaint about Dewey Scott Frazier, isn't it?

A. Yes, sir.

    \*    \*    \*    \*    \*    \*

Q. You didn't jump out and run to the police officer and say thank goodness you're here?

A. No, sir. When that officer pulled a gun on me, it scared me that much more. I was scared. I didn't know what to do or which way to turn.

In closing argument, the District Attorney General stated to the jury:

General Kirkpatrick: . . . Echol Head didn't act like a victim of a crime when he got stopped. Common sense tells you that Echol Head didn't act like the victim of a crime when the police stopped him . . .

General Kirkpatrick: Well, I didn't know Echol Eugene Head. He testified on the witness stand that I was talking to him for the first time. The first time I ever talked to him was here in the Courtroom with him on the witness stand.

■ We agree that a defendant has a constitutional right to remain silent in the face of accusations against him and that the prosecution may not ordinarily use at trial the fact that a defendant stood mute or claimed his privilege in the face of accusations. *Braden v. State,* Tenn., 534 S.W.2d 657 (1976); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, in extreme cases, evidence of silence is admissible when silence is inconsistent with exculpatory trial testimony. *United States v. Fairchild,* 505 F.2d 1378 (5th Cir. 1975); *Braden v. State, supra; Kelley v. State,* Tenn.Cr.App., 478 S.W.2d 73 (1972); *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240 (1976), footnote 11. In *United States v. Fairchild, supra,* the Court said:

The attack on the defendant-witness and his testimony may, of course, take the form of impeachment by prior inconsistent act. We have held that, in extreme cases, silence following *Miranda* warnings can be the type of act which is inconsistent with certain exculpatory trial testimony. In such cases evidence of the silence is admissible. *United States v. Ra-*

---

1. At the trial of Dewey Scott Frazier, the appellant was called as a witness by the State, but declined to testify, invoking his Fifth Amendment Rights. During a jury-out hearing, the

District Attorney General mentioned this occurrence, but appellant's jury was never made aware of his invoking the Fifth Amendment Rights during Frazier's trial, hence no error.

*mirez,* 441 F.2d 950 (5th Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971), *United States v. Quintana-Gomez,* 488 F.2d 1246 (5th Cir. 1974). But, to be admissible, keeping silence must be much more than ambiguous. It must appear to be an act blatantly inconsistent with the defendant's trial testimony. This will be the case when, as in *Ramirez* and *Quintana-Gomez,* the exculpatory testimony is of such a character that reasonable men would be left with the distinct impression that had it been true it would have been related to law enforcement authorities *even though* the defendant was specifically informed that he need not speak. 505 F.2d at 1382.

Our Supreme Court, in *Braden v. State, supra,* speaking through Mr. Justice Cooper, said:

> In these cases the courts sought to and did strike a balance between protecting the self-incrimination bar of the Fifth Amendment allowing full testing of the truth of defendant's trial testimony. We agree with this objective, but hasten to emphasize that evidence of pre-trial silence of the defendant must be admitted with caution and then only where such silence is patently inconsistent with the defendant's testimony. For example, *Kelley v. State, supra.*
>
> 534 S.W.2d at 660.

■ The facts of this case are clearly within the rule allowing cross-examination concerning the defendant-witness's silence at the time of arrest. The appellant's silence is an act blatantly inconsistent with his testimony that he was held captive by Frazier at pistol point after a bank robbery and forced to assist the bank robber in evading capture. The jury was entitled to test the truth of the appellant's trial testimony in the light of his conduct in remaining silent when allegedly rescued by the police from Frazier. This assignment is overruled.

■ In his fourth assignment, the appellant complains of the State cross-examining him on "specifics as to the record of the felony-conviction from Carter County, Missouri, even though the appellant had previously answered in the affirmative that he had been convicted of a felony." On direct examination, the appellant's attorney asked him, "Were you convicted of a felony in Missouri," when he was 19 years of age. On cross-examination, the State specifically asked the appellant if he "pleaded guilty to second-degree burglary and stealing in Carter County, Missouri, on April the 23rd, 1971?" The appellant answered both questions in the affirmative.

The appellant complains of the specific nature of the State's question, citing *State v. Morgan,* Tenn., 541 S.W.2d 385 (1976). However, the *Morgan* case holds that the question should be specific and that the question, "Do you have any prior felony convictions?" is too broad.

The appellant further argues, "The record is clear that the court did not determine outside the presence of the jury whether the evidence of a particular crime or specific acts were admissible___" The appellant is mistaken in this assertion; the record reflects that the matter was considered and determined at a jury-out hearing. There is no merit in this assignment.

In his last assignment of error, the appellant says that his trial counsel was ineffective and the court should have declared a mistrial when it became evident that defense counsel was "admittedly sick and ill." He also criticises his trial counsel for not calling Dewey Scott Frazier as a witness.

At 6:45 P.M., the trial judge sent the jury for its evening meal. After the jury left, trial counsel moved to adjourn, telling the court that he had been ill and was "whipped." The jury returned from dinner at 7:30 P.M., when court was immediately adjourned for that day. There is nothing in the record indicating that trial counsel was physically or mentally impeded in the trial of the case before requesting and being granted the adjournment. The trial judge found, from observation of the trial counsel, that trial counsel was in no way incompetent and was "as aggressive as a trial lawyer as he has ever been." The record supports the trial judge's observations.

■ The appellant filed the affidavit of Dewey Scott Frazier, stating that the appellant did not participate in the robbery and was not aware that Frazier intended the robbery.[2] He says that the appellant's attorney did not interview him. We glean from the record that the appellant's attorney did read a copy of the transcript of Frazier's trial and was familiar with Frazier's criminal record. From the opinion of this court in the case of *Dewey Scott Frazier v. State of Tennessee,* Tenn.Cr.App., 566 S.W.2d 545 cert. denied by Supreme Court Feb. 13, 1978, it appears that Frazier was adjudicated as an habitual criminal; that he had a total of seven burglary convictions, four felony escape convictions, one bank robbery conviction, and one conviction for using a firearm in the commission of a felony. The failure to use him as a witness is not *per se* evidence of ineffective counsel. There was no hearing on the motion for a new trial and, hence, no specific evidence as to why trial counsel did not use him as a witness. In context of this record, we can see where there could be differences of opinion among able and experienced lawyers as to the advisability of offering Frazier to testify on behalf of the appellant. We hold that the appellant has not shown the failure to utilize Frazier as a witness rendered trial counsel inadequate and ineffective within the meaning of *Baxter v. Rose,* Tenn., 523 S.W.2d 930 (1975).

Finding no error, we affirm the judgment of the Criminal Court.

WALKER and DUNCAN, JJ., concur.

---

2. The affidavit of Frazier makes no mention of the get-away nor sheds any light on whether the appellant's participation in the get-away was voluntary or coerced.