**Echol Eugene HEAD, Petitioner,**

v.

**Vince THOMPSON, etc., et al., Respondents.**

**No. CIV–2–78–160.**

United States District Court, E. D. Tennessee, Northeastern Division.

Oct. 16, 1978.

On Due Process Claim Nov. 22, 1978.

*Leeke*, C/A 74–1231, D.S.C. (J. Blatt, January 29, 1975), affirmed September 26, 1975, No. 75–2000, 4th Cir., 529 F.2d 516 (Table).

W. Stanley Yarbro, Johnson City, Tenn., for petitioner.

William P. Sizer, Asst. Atty. Gen., Nashville, Tenn., for respondents.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The petitioner Mr. Echol Eugene Head, a person in custody of the respondent warden pursuant to the judgment of October 19, 1977 of the Criminal Court of Sullivan County, Tennessee, applied to this Court for the federal writ of habeas corpus, claiming that he is in such custody in violation of his federal rights against self-incrimination and to due process of law, Constitution, Fifth and Fourteenth Amendments, and to the assistance of counsel, Constitution, Sixth Amendment. 28 U.S.C. § 2254(a). He claims the exhaustion by every procedure of the remedies available to him under the laws of Tennessee in its courts, 28 U.S.C. §§ 2254(b), (c), by having presented the questions he presents here to Tennessee courts without having been accorded his federal rights, in *State of Tennessee v. Echol Eugene Head,* in the Criminal Court of Sullivan County, Tennessee; *Echol Eugene Head, appellant, v. State of Tennessee, appellee,* CCA no. 351 in the Court of Criminal Appeals of Tennessee; *Echol Eugene Head, petitioner, v. State of Tennessee, respondent,* in the Supreme Court of Tennessee, 570 S.W.2d 362.

Mr. Head asserts a denial of his federal right to the assistance of counsel on the basis that his counsel was ineffective because, *inter alia,* he was physically ill and failed and neglected to present a crucial witness on his behalf. It was determined by the judge of the Criminal Court of Sullivan County, Tennessee in *State of Tennessee v. Echol Eugene Head, supra,* from observation of trial counsel for the applicant during such trial that he was in no way

**4**

incompetent and was "* * * as aggressive as a trial lawyer as I have ever seen. * * *" It was found by the Court of Criminal Appeals of Tennessee that nothing in the record of those proceedings indicated that trial counsel was physically or mentally impeded in such trial; that, at 6:45 o'clock, p. m., such counsel moved for an adjournment of the trial on the ground that he was ill and fatigued; that, immediately the jury returned from dinner at 7:30 o'clock, p. m., the motion was granted; and that such record supported the aforementioned observations of the applicant's trial counsel. *Echol Eugene Head, appellant, v. State of Tennessee, appellee, supra.* Those factual determinations[1] are presumed to be correct. 28 U.S.C. § 2254(d).

The applicant was given the *Miranda* warnings by law enforcement officers immediately after his arrest. He made no statement thereafter until the time of his trial. Before he was placed on trial, he was called as a witness in the trial of Mr. Frazier, who, in such trial, was convicted of having committed the armed robbery of a bank. Mr. Head claimed his privilege under the Constitution, Fifth Amendment, against self-incrimination and gave no testimony.

Subsequently, Mr. Head was placed on trial for aiding and abetting Mr. Frazier in such robbery. At this trial, Mr. Head sought to exculpate himself with his claim that Mr. Frazier had victimized him by taking him hostage in the "get-away-car" after robbing the bank in his (Mr. Frazier's) attempt to elude pursuing police officers. On cross-examination of Mr. Head, the prosecuting attorney inquired if the applicant were " * * * taking the position * * *" that he had been victimized by Mr. Frazier and had been " * * * held as a hostage by Dewey Scott Frazier in his attempts to escape the law. * * *" Mr. Head admit-

ted to that position. The prosecuting attorney for the state of Tennessee then asked Mr. Head if " * * * [t]oday is the first time you've ever made [any such] complaint about Dewey Scott Frazier? * * *" Mr. Head replied that it was. He was then asked to affirm that he " * * * didn't jump out and run to the police officer and say, 'thank goodness, you're here.' * * * " Mr. Head did so, explaining that he was " * * * scared * * *" and that, when an arresting officer " * * * pulled that gun on me, it scared me that much more; I didn't know what to do or which way to turn. * * *" In his summation to the jury afterward, the prosecuting attorney asked the jury to infer that Mr. Head's story was untrue, stating: " * * * Common sense tells you that Echol Head didn't act like the victim of a crime when the police stopped him. * * *"

■ This use for impeachment purposes of the applicant's silence at the times of his arrest and his invocation earlier of his privilege against self-incrimination to maintain that silence, after having received the *Miranda* warnings, violated the Constitution, Fourteenth Amendment, Due Process Clause. " * * * [I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege [against self-incrimination] when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed [the] privilege in the face of accusation. * * *" *Miranda v. Arizona* (1966), 384 U.S. 436, 468, 86 S.Ct. 1602, 1625 n. 37, 16 L.Ed.2d 694, 720, n. 37[25]. To do so amounted to an error of constitutional proportions. *United States v. Earl*, C.A. 6th (1976), 529 F.2d 1145, 1147[1].

The Court of Criminal Appeals of Tennessee concluded that Mr. Head's case came within the rule allowing cross-examination

---

1. The applicant did not present to the courts of Tennessee fairly his claim of ineffective assistance of counsel stemming from the failure of his attorney to present Mr. Dewey Scott Frazier as an exculpatory witness. The applicant presented no evidence to the Criminal Court of Sullivan County, Tennessee regarding the reason such attorney did not present Mr. Frazier

as a witness for the applicant; thus, the Court of Criminal Appeals of Tennessee actually had little or nothing to review in this regard.

The exhaustion requirement is not satisfied until the matter has " * * * been fairly presented to the state courts. * * *" *Picard v. Connor* (1971), 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438, 443[2].

concerning the defendant-witness' silence at the time of arrest, relying *inter alia* on *United States v. Fairchild,* C.A. 5th (1975), 505 F.2d 1378, 1382. However, *Fairchild, supra,* antedated *Doyle v. Ohio*[2] (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, in which the Supreme Court held that the use of a defendant's post-arrest silence for the purpose of impeaching the defendant's testimony, that he had been "framed" by someone else, through cross-examination on his failure to tell the "frame story" at the time of his arrest and earlier, violated due process. Mr. Justice Powell stated for 6 members of the Court:

 \*   \*   \*   \*   \*   \*

 \* \* \* Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position [that the need to present to the jury all information relevant to the truth of the petitioner's exculpatory story fully justified his cross-examination on it]. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights, require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. \* \* \* Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circum-

stances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. \* \* \* "[W]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . ."
\* \* \*

*Ibid.,* 426 U.S. at 617–619, 96 S.Ct. at 2244–2245, 49 L.Ed.2d at 97–98[2a, 3] (footnote references and citations omitted). It remains to be seen whether, in the circumstances of Mr. Head's case, the respondent will claim that his denial of due process constituted harmless error. *Cf. ibid.,* 426 U.S. at 638–639, 96 S.Ct. 2240, 49 L.Ed.2d 98–99[4].

 ▮ There is no federal constitutional claim stated by the applicant concerning the manner of his being questioned on cross-examination for purposes of impeaching his credibility regarding the details of his previous convictions of a felony. This claim relates only to Tennessee law and procedure, and the alleged error has been considered on appeal by the applicant and found to lack merit. *Cf. Manier v. Neil,* D.C.Tenn. (1969), 306 F.Supp. 643, 644[2], appeal dismissed C.A. 6th on December 8, 1969 in no. 19,780.

 As to all but the applicant's claim of violation of his federal right to due process

2. *Doyle* was cited in the opinion of the Court of Criminal Appeals of Tennessee as one of a line of cases which appear to hold that, in extreme cases, evidence of silence is admissible when silence is inconsistent with exculpatory trial testimony. However, such citation was to footnote 11 thereof, which states *inter alia*: "\* \* \* It goes almost without saying that the fact of post-arrest silence could be used by

the prosecution to contradict *a defendant who testifies to an exculpatory version* of events *and claims to have told police the same version upon arrest.* \* \* \*" (Emphasis supplied.) As Mr. Head gave no version whatever of his being with Mr. Frazier to arresting officers, that isolated observation in a footnote in *Doyle* is inapposite herein.

by the use at his trial for impeachment purposes of his silence at the time of his arrest and after having claimed his privilege under the Constitution, Fifth Amendment, in the trial of Mr. Frazier,[3] the applicant hereby is DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure. As to the remaining claim of the applicant, the respondent will make a return certifying the true cause of the applicant's detention and show any cause why the federal writ of habeas corpus should not be granted within 43 days herefrom. 28 U.S.C. § 2243. The noticed slow movement of the mail currently provides good cause for the additional time allowed. *Idem.;* Rule 81(a)(2), Federal Rules of Civil Procedure.

### ON DUE PROCESS CLAIM

The respondent made a return herein, certifying that the true cause of the applicant's detention is his judgment of conviction by the Criminal Court of Sullivan County, Tennessee on October 19, 1977. See memorandum opinion and order herein of October 16, 1978. He undertook to show as cause why the federal writ of habeas corpus should not be granted herein the harmlessness of the error in the state of Tennessee's denying the applicant federal due process of law during his trial in the aforenamed Tennessee court.[1] *Idem.*

" * * * [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * *" *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–711[7]. This Court's judgment in that connection must be based upon its own reading of the record and what seems to have been the impact of the erroneous questions and comments on the minds of an average jury. *Harrington v. California* (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284, 288[7]. If, apart from the erroneous ques-

tions and comments, the evidence of Mr. Head's guilt is found to have been " * * * overwhelming, * * *" *ibid.,* 395 U.S. at 254, 89 S.Ct. at 1729, 23 L.Ed.2d at 287[5], this Court is justified in finding that such violation was harmless beyond a reasonable doubt.

Mr. Dewey Scott Frazier committed the violent armed robbery of the Kings-Giant Plaza branch of the First National Bank of Sullivan County in Kingsport, Tennessee at about 4:00 o'clock, p. m., September 14, 1977. He then fled from such institution and entered a white Chevrolet Covair automobile, owned by Mrs. Carla Mechele Head (the wife of the applicant) and operated by Mr. Head, the engine of which was and had been running for some 15 minutes prior thereto, and the license tag of which was folded over and creased in such manner that its peculiar numbering was not readily visible. As Mr. Frazier placed his left foot into such vehicle, Mr. Head commenced driving the vehicle from the scene through the parking area adjacent to such institution and westwardly toward Bloomingdale Pike.

Messrs. Doty and Gibson, police officers of the City of Kingsport, Tennessee, received a description of the aforementioned vehicle by radio transmission to the cruiser in which they were riding while they were proceeding eastwardly in the 1100 block of West Sullivan Street and soon thereafter saw a vehicle meeting that description proceeding westwardly on the same street. The officers gave chase, sometimes at high rates of speed, until the pursued vehicle stopped at the intersection of West Sullivan and Fulton streets. At this point, Mr. Frazier leaped from the pursued vehicle and fled along Fulton street. He was pursued afoot by Mr. Gibson. As the pursued vehicle commenced a further forward movement, Mr. Doty pulled the police cruiser in

---

**3.** On appeal herein, the Court of Appeals found no violation of the applicant's federal Constitutional right. *Head v. Thompson*, C.A. 6th (1979), 601 F.2d 588 (table).

**1.** Although conceding in his answer that he is restricted to arguing that the error involved herein was harmless, he, nonetheless, proceeded to argue against this Court's earlier specific finding that Mr. Head was deprived of his federal right to due process of law.

front of the pursued vehicle, blocking its further forward-progress. It was at this time and place that Mr. Head was arrested and held in the rear seat of the police cruiser. At this time and place also, the aforementioned license tag was identifiable, although the crease in it remained visible.

Mr. Head claimed in his testimony that, while he was acquainted with Mr. Frazier, he was not aware of his reputation for criminality; that he had driven the vehicle involved into this area for the purpose of allowing Mr. Frazier to purchase additional whiskey and had no prior knowledge of Mr. Frazier's intention to rob the bank involved; that he had caused the engine of his wife's automobile to "idle" for about 15 minutes while he awaited Mr. Frazier's return, because it was difficult to start when turned-off; that his son was responsible for the folding-over of the license plate upon it; and that Mr. Frazier had forced him to drive his wife's automobile from the parking area.

An approach to the resolution of the issue, regarding the impact of the error on the minds of an average jury, is to consider the evidence without the use of the violative addition and then to consider it with it. The evidence of Mr. Head's guilt as a participant in the robbery of this institution would have been overwhelming without his having been asked about his pretrial silence and the prosecutor's comments to the jury concerning it.[2] That evidence reflected his role as the classical driver of a "get-away" vehicle immediately subsequent to a robbery. Using Mr. Head's pretrial silence as somehow constituting further evidence of his guilt probably produced a minimal impact on the jury's collective mind, in this Court's considered opinion.

 With this view of the matter, this Court can, and hereby does, DECLARE its belief beyond a reasonable doubt that the error of constitutional proportions committed in Mr. Head's trial was harmless because the evidence of his guilt was so over-whelming without it. It is the consequent decision of this Court that Mr. Head is DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure.

Should the applicant give timely notice of an appeal from the judgment to be entered herein, such will be treated also as an application for a certificate of probable cause. Rule 22(b), Federal Rules of Appellate Procedure. As this Court and a distinguished panel of the Court of Criminal Appeals of Tennessee have reached contrary conclusions concerning the infringement of the applicant's federal constitutional rights, and as a finding of harmlessness of the federal error is so necessarily subjective in nature, such certificate, thereupon will ISSUE. *Idem.*

---

2. Prosecuting attorneys would do well to consider in advance of asking questions and offering comments of this character whether they have not presented already an overwhelming case of a defendant's guilt, so that the resulting "over-kill" is but a redundancy.